**John R. WINEGARD, Appellant,**

v.

**Richard A. LARSEN, Stephen L. Schalk, Robert Bradfield, Larsen, Schalk & Bradfield, a partnership and/or association engaged in the practice of law, Appellees.**

**No. 59593.**

Supreme Court of Iowa.

Dec. 21, 1977.

Rehearing Denied Feb. 17, 1978.

Edward W. Dailey Law Offices, P. C., Burlington, for appellant.

Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellees.

Heard by MOORE, C. J., and LeGRAND, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

Plaintiff John R. Winegard filed a petition in two divisions seeking damages for invasion of privacy and defamation against defendants Richard A. Larsen, Stephen L. Schalk, and Robert Bradfield, members of a Davenport law firm. The trial court sustained defendants' motion for summary judgment on the invasion of privacy claim, and plaintiff appeals from that ruling. We affirm.

Familiar principles govern our review in summary judgment cases. They are discussed in a number of recent decisions and will not be repeated here. See *Graham v. Kuker*, 246 N.W.2d 290 (Iowa 1976); *Daboll v. Hoden*, 222 N.W.2d 727 (Iowa 1974); *Mead v. Lane*, 203 N.W.2d 305 (Iowa 1972);

*Sherwood v. Nissen*, 179 N.W.2d 336 (Iowa 1970).

■ We recognize a common law tort for invasion of privacy in Iowa. See *Bremmer v. Journal Tribune Publishing Company*, 247 Iowa 817, 76 N.W.2d 762 (1956). We have also cited with approval Professor Prosser's characterization of the kinds of actionable invasion which may occur. *Yoder v. Smith*, 253 Iowa 505, 112 N.W.2d 862 (1962).

The questions here are (1) whether an invasion of privacy action can be based on oral statements, (2) whether the confidentiality provisions of § 598.26, The Code, apply to filings in this court, and (3) whether the record shows a genuine issue of material fact upon which plaintiff is entitled to trial.

Plaintiff's action is predicated on statements allegedly made by one or more of the defendants to a reporter for the Des Moines Register and Tribune Company concerning a Des Moines County dissolution of marriage action in which plaintiff was respondent. We have decided two other cases arising from the same controversy. They are *In re Marriage of Winegard*, 257 N.W.2d 609 (Iowa 1977), and *Winegard v. Oxberger*, 258 N.W.2d 847 (Iowa 1977). The first case was an appeal by plaintiff from an allowance of temporary attorney fees to petitioner in the dissolution action. We affirmed. The latter case was a certiorari action against a Polk County judge who refused to compel discovery of the newspaper reporter who wrote articles containing the statements upon which the present action is based. We sustained the writ.

In this action plaintiff contends his privacy was invaded by the alleged statements to the reporter. He singles out the following parts of resulting newspaper articles as showing actionable statements:

1. (from the Des Moines Tribune of January 8, 1975)

Mrs. Winegard's attorney, Stephen Schalk, of Davenport, said the two exchanged wedding rings during a return flight from Las Vegas in 1971 and have held themselves out to the community as husband and wife since that time.

A daughter from one of Sally Ann Winegard's previous marriages had her name changed to Winegard by the two adults, according to the attorney.

2. (from the Des Moines Register of January 9, 1975)

Sally Ann Winegard's attorney, Stephen Schalk of Davenport said the two exchanged wedding rings during a return flight from Las Vegas in 1971 and have held themselves out to the community as husband and wife since that time.

A daughter from one of Sally Ann Winegard's previous marriages had her last name changed to Winegard by the two adults, according to the attorney.

3. (from The Hawkeye, of Burlington, on January 9, 1975)

The pair has allegedly lived together since 1971. Her attorney, Stephen Schalk of Davenport has said they exchanged wedding rings that year and have since shown themselves to the community as husband and wife.

Defendants alleged in their motion for summary judgment that no genuine issue of material fact existed to preclude judgment for them as a matter of law. In support of their motion they introduced trial court findings of fact and conclusions of law from the dissolution action, a copy of a complaint filed by plaintiff in federal court in an effort to halt discovery of his financial affairs in the dissolution case, and the Polk County district court ruling denying plaintiff's motion to compel discovery of the newspaper reporter. In resisting the motion, plaintiff introduced an affidavit in which he denied the truth of the statements attributed to Schalk in the newspaper articles, copies of motions filed by him in the Polk County action, copies of the petition for certiorari and writ of certiorari issued to the Polk County district court, orders of this court sequestering documents relating to the dissolution action in the certiorari case in this court, and an affidavit that the dissolution trial was closed to the public.

The specific legal issues on which the motion for summary judgment was heard were raised in a brief which defendants filed with their motion. After hearing the motion, the trial court overruled it as to the defamation division of the petition but sustained it as to the invasion of privacy division. The court held defendants were entitled to summary judgment on the invasion of privacy claim because oral statements cannot invade privacy, a violation of Code § 598.26 cannot be the basis of a civil suit, the facts alleged to invade plaintiff's privacy were made public by him when he filed his complaint in the federal court and his application for interlocutory appeal with this court in the dissolution case, and statements which accurately report a judicial proceeding do not constitute an invasion of privacy. This appeal by plaintiff ensued.

I. *Are oral statements actionable?* One of the legal grounds relied on by the trial court in granting defendants summary judgment was that oral as opposed to written statements do not constitute an actionable invasion of privacy. Plaintiff contends this ground is without merit, and we agree. We assume, without deciding, that the present record shows plaintiff's action is predicated solely on oral communications.

In their historic article on the right of privacy Samuel D. Warren and Louis V. Brandeis wrote that "the law would probably not grant any redress for the invasion of privacy by oral publication in the absence of special damage." Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193, 217 (1890). They reasoned that the injury from oral communications would ordinarily be so minor that courts might well disregard it. Although a few courts in older cases held or suggested privacy could not be invaded by mere spoken words, it is generally held today that the right of privacy can be violated by any means of communication. See, e. g., *Santiesteban v. Goodyear Tire & Rubber Co.*, 306 F.2d 9 (5 Cir. 1962); *Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So.2d 321 (1961); *Sacco v. Eagle Finance Corp.*, 234 So.2d 406 (Fla.App.1970); *Brown v. Colonial Stores, Inc.*, 110 Ga.App.

154, 138 S.E.2d 62 (1964); *Carr v. Watkins*, 227 Md. 578, 177 A.2d 841 (1962); *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892 (Mo.1959); *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956); Annot., 56 A.L.R.3d 386; Annot. 19 A.L.R.3d 1318; Wade, Defamation and the Right of Privacy, 15 Vand.L.Rev. 1093, 1103–1105 (1962); Prosser on Torts § 117 at 810 (Fourth Ed. 1971).

Circumstances have changed since publication of the Warren-Brandeis article. In this era of mass oral as well as written communication, an invasion of privacy may occur as readily by the spoken as by the written word. See *Biederman's of Springfield, Inc. v. Wright*, Mo., 322 S.W.2d at 897 ("The oral publication of a private matter with which the public has no proper concern may be just as devastating and damaging as a written communication.").

The present case illustrates the validity of the modern view. If one of the defendants did make the statements in an interview with a newspaper reporter as alleged, the statements obviously were made with an expectation they might be printed in a newspaper. Any resulting invasion of privacy would be as great as if the statements had been made in writing.

In accordance with the modern rule, we hold that spoken words may be an actionable invasion of privacy. The trial court erred in holding otherwise.

II. *Do the confidentiality provisions of Code § 598.26 apply in this court?* The trial court held plaintiff's invasion of privacy claim could not be based on § 598.26, The Code. This statute provides for confidentiality, in defined circumstances, of the record and evidence in dissolution of marriage cases and includes a misdemeanor penalty for violation. The court's holding rested on two bases. The first was that a violation of the statute will not support a civil action for invasion of privacy. The other was that its protection is not available here in any event.

The statute provides:

The record and evidence in all cases where a marriage dissolution is sought shall be closed to all but the court and its officers, and access thereto shall be refused until a decree of dissolution has been entered. If the action is dismissed judgment for costs shall be entered in the judgment docket and lien index. The clerk shall maintain a separate docket for dissolution of marriage actions. No officer or other person shall permit a copy of any of the testimony, or pleading, or the substance thereof, to be made available to any person other than a party or attorney to the action. Nothing in this section shall be construed to prohibit publication of the original notice as provided by the rules of civil procedure. Violation of the provisions of this section shall be a public offense, punishable by a fine of not more than one hundred dollars, or imprisonment in the county jail not more than thirty days, or by both such fine and imprisonment.

■ The first basis relied on by the trial court is untenable. We have recognized that those within the protection of criminal statutes in Iowa have a statutory right to civil remedies for harm caused by their violation in all cases. *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 423 (Iowa 1977); § 611.21, The Code. As a party to the dissolution action involved here, plaintiff is in the class protected by § 598.26. See *Giltner v. Stark*, 219 N.W.2d 700, 707 (Iowa 1974). Therefore he is not barred from seeking to recover for alleged harm caused by violation of the statute.

The second basis relied on by the trial court presents a more complex problem. As explained in *In re Marriage of Winegard*, supra, 257 N.W.2d at 610, the dissolution action was bifurcated by agreement of counsel, and the question of the existence of the marriage was litigated first. The dissolution trial court, Judge D. B. Hendrickson, subsequently filed an eleven page document denominated "Findings of Fact and Conclusions of Law." This ruling is not limited to reciting findings of fact. Much of it consists of a summary of the testimony of the two parties. The court concluded the ruling by holding "John and Sally are husband and wife by virtue of a common law marriage."

On October 21, 1974, plaintiff filed with this court an application for permission to appeal Judge Hendrickson's ruling attaching a copy of the ruling as an exhibit. The application was denied on November 26, 1974. We entered an ordered sequestering this file on February 15, 1975. Later when the Hendrickson ruling surfaced here again as an exhibit in *Winegard v. Oxberger*, supra, it was, upon plaintiff's application, sequestered along with other papers relating to the dissolution proceeding.

The dissolution transcript and Hendrickson findings and conclusions were part of the public record in plaintiff's appeal from the allowance of temporary attorney fees in the dissolution action, *In re Marriage of Winegard*, supra. However, that appeal was taken on July 18, 1975, which was subsequent to the alleged statements on which the present action is based.

Our sequestration order in the *Winegard v. Oxberger* case was entered to preserve plaintiff's asserted right to confidentiality under § 598.26 because applicability of the statute was one of the issues presented in that action. However, we held in our decision of the case that the intervening public exposition of the full dissolution record *In re Marriage of Winegard* made it unnecessary to decide the § 598.26 issue. See *Winegard v. Oxberger*, 258 N.W.2d at 849.

■ We must decide the issue in the present appeal. If § 598.26 applies to records of this court, plaintiff did not lose its protection by filing the Hendrickson ruling with our clerk when he sought permission to appeal. We need not decide what the effect would be of our maintaining the appeal papers as a public record prior to the February 1975 sequestration order because we hold § 598.26 does not apply to proceedings in this court.

Moreover, it is not established in the present record that the dissolution trial was open. See § 598.8, The Code. Therefore

we are not confronted with an issue here concerning whether § 598.26 is applicable when the dissolution trial has been open to the public. See *Cox Broadcasting Corporation v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).

Principles governing statutory interpretation are summarized in *Iowa National Industrial Loan Company v. Iowa Department of Revenue*, 224 N.W.2d 437, 439–440 (Iowa 1974). We search for legislative intent. Statutes which restrict access to court records are in derogation of the common law and are to be strictly construed. *Mulford v. Davey*, 64 Nev. 506, 186 P.2d 360 (1947). If the legislature desires secrecy in the judicial process, it must say so plainly. § 605.16, The Code; see *State ex rel. Journal Co. v. County Court for Racine County*, 43 Wis.2d 297, 168 N.W.2d 836 (1969).

Code chapter 598 concerns district court actions for dissolution of marriage in Iowa. Those actions ordinarily proceed to conclusion in district court. In order to foster conciliation and discourage the parties from a public freezing of position, the legislature provided in § 598.26 for confidentiality of the record and evidence in the case "until a decree of dissolution has been entered." *Giltner v. Stark*, 219 N.W.2d 700, 706 (Iowa 1974). The statute limits access to "the court and its officers." The duty to maintain a separate docket is imposed on "[t]he clerk."

Numerous references to "the court" and "the clerk" occur in chapter 598 outside of § 598.26. It is manifest that these terms refer to the district court, which has original jurisdiction of dissolution actions, and the clerk who serves that court. See, e. g., § 598.11 ("The court may order either party to pay the clerk * * *."); § 598.15 ("The petition may be presented to the court * * *."); § 598.17 ("A decree dissolving the marriage may be entered when the court is satisfied * * *."). We hold the terms "court" and "clerk" have the same meaning in § 598.26 as they do in the other sections of chapter 598. They refer to the district court and its clerk; they do not include the supreme court and its clerk.

Assuming appeal of a ruling before final decree, as in *In re Marriage of Winegard*, supra, it would be impossible for this court to make even its opinion public if § 598.26 reached the records of this court. The statute purports to require secrecy until final decree of dissolution is entered. Yet our opinions are a matter of public record. See § 684.12, The Code.

We believe the legislature intended § 598.26 to apply only to the record and evidence in district court. This enables the statutory purpose to be accomplished in most cases. An appeal prior to final decree in a dissolution action is exceptional and is beyond the scope of § 598.26.

Perhaps the purpose of § 598.26 would be unduly attenuated in any event if it did extend to the appellate level. A dissolution litigant who seeks review of an interlocutory order is usually frozen into an adversary position from which he is unlikely to retreat. It is anomalous in the present case that this plaintiff, who aggressively contends no marriage exists, seeks a civil remedy under the aegis of a statute designed to encourage reconciliation.

■ We hold plaintiff's application for interlocutory appeal, with Judge Hendrickson's findings and conclusions attached, became a matter of public record when it was filed in this court. Therefore, for purposes of the present case, the information in it was public and not private. The portion of the record and evidence which remained in the district court retained its confidentiality.

On this basis, we agree with the trial court that § 598.26 provided no protection to plaintiff from disclosure of the information in the Hendrickson ruling.

III. *Is there a genuine issue of material fact for trial?* The trial court held the public nature of the Hendrickson findings and conclusions was sufficient to establish the public nature of the information in the statements attributed to defendant Schalk in the news stories, eliminating them as a basis for invasion of privacy.

The Hendrickson ruling summarized the testimony of the parties in the dissolution trial. The same evidence is summarized in *In re Marriage of Winegard*, 257 N.W.2d at 611–612. Several relatively minor variances exist between the summary of Sally Ann Winegard's testimony and the information in the statements in the news articles.

We assume for purposes of determining whether plaintiff has a viable invasion of privacy claim that Schalk made the statements attributed to him in the news stories. This makes it unnecessary to decide whether plaintiff was prejudiced in his ability to resist summary judgment by the Polk County Court's refusal to permit discovery of the reporter. *Cf. Carter v. Jernigan*, 227 N.W.2d 131 (Iowa 1975).

Regarding the return flight from Las Vegas in 1971, the ruling recites "Sally testified that at that time John gave her a ring and told her they were the same as married and no ceremony was necessary." Unlike the news articles, no testimony about an exchange of rings is shown. The ruling does reflect a great deal of testimony showing the parties subsequently held themselves out to the community as husband and wife.

The only reference in the ruling to a name change of petitioner's daughter is the statement, "Sally's daughter, Wendy, was enrolled in school in the fall of 1971 as Wendy Winegard although no adoption proceedings were instituted." By comparison, two news articles reported Schalk said the two adults changed the daughter's last name to Winegard. However, the Hendrickson ruling does say, "John also testified that he told Sally * * * she could use his name." Plaintiff admitted Sally used the Winegard name and he did not object. Much of the evidence recited in the ruling tends to show he called her Sally Winegard himself. Even though he denied the common law marriage, it does not appear he disputed the evidence of usage of the Winegard name.

We think the Hendrickson ruling is important here for several reasons. It shows the testimony of the parties in the dissolution action. Because it was a public record at the time the alleged Schalk statements were made, it provides a basis for determining whether plaintiff had a right of privacy regarding the information contained in those statements. It also permits a comparison to be made between plaintiff's admissions in his testimony at trial and his affidavit denying the accuracy of the alleged Schalk statements in resisting the motion for summary judgment.

■ The four forms of invasion of privacy cited in *Yoder v. Smith*, 253 Iowa at 508, 112 N.W.2d at 863–864, have been adopted in Restatement of the Law Second, Torts. They appear in § 652A as follows:

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

(b) appropriation of the other's name, or likeness, as stated in § 652C; or

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

We approve these principles and apply them here.

The record made in the summary judgment proceeding establishes that plaintiff's invasion of privacy claim does not come within these theories of action.

Category (a) requires an intentional intrusion upon the solitude or seclusion of another which would be highly offensive to a reasonable person. § 652B. In view of the public nature of Judge Hendrickson's ruling, Schalk's later statements could not be held to be an intrusion upon the solitude or seclusion of another within the meaning of this principle. See § 652B, Comment c; Prosser on Torts § 117 at 807–809 (Fourth Ed. 1971).

Category (b) is plainly inapplicable because no appropriation of name or likeness is involved here.

Category (c) is governed by § 652D:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

As noted in Comment b under § 652D, this rule applies only to publicity given to matters concerning the private, as distinguished from the public, life of an individual and "[t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public." This theory is available only when the defendant has publicly disclosed private facts. *Hubbard v. Journal Publishing Company*, 69 N.M. 473, 368 P.2d 147 (1962); Prosser, supra, at 810–811. Under this rule defendants could not be held liable for publicizing matters contained in Judge Hendrickson's ruling. Plaintiff had no right as of October 21, 1974, to keep that information secret.

To the extent that Schalk's alleged statements varied somewhat from the information in the ruling the statements do not penetrate plaintiff's zone of privacy but instead are covered by category (d), relating to publicity placing a person in a false light.

Category (d) is controlled by § 652E:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

This category overlaps the law of defamation. See § 652E, Comment b; Prosser, supra, at 813.

Plaintiff gave an affidavit that Schalk's alleged statements are untrue. However, our analysis shows only minor variations between what Schalk is alleged to have said and what the Hendrickson ruling shows was said by the parties at trial. Whether plaintiff and Sally exchanged rings or he is simply gave her a ring is not material on the invasion of privacy issue. Similarly, even if the name change of the daughter was Sally's act alone, it is difficult to see how, in context, plaintiff can seriously contend this inaccuracy materially affected the public view of his conduct.

The evidence in the dissolution case disclosed in the Hendrickson ruling was so unusual as inevitably to make plaintiff an object of public curiosity. We do not think the public's view could be materially affected by the minor variations between the evidence recited in the ruling and the Schalk statements. Even when deliberately false statements are made, they are not actionable under the false light theory unless they are material and substantial. § 652E, Comment c. ("The plaintiff's privacy is not invaded when the unimportant false statements are made, even when they are made deliberately. It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.") See *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). Viewing the evidence in its light most favorable to plaintiff here, the Schalk statements do not meet this test.

Under the record, we find defendants established that no genuine issue of fact existed from which a trier of fact could find the alleged statements invaded plaintiff's privacy on any cognizable theory. The trial court was correct in entering summary judgment on that division of the petition. The court's ruling on the defamation divi-

sion is not before us, and we intimate no view on it.

AFFIRMED.