**Peggy A. HILL, Plaintiff,**

v.

**MCI WORLDCOM COMMUNICATIONS, INC., Defendant.**

**No. 4–00–CV–70496.**

United States District Court, S.D. Iowa, Central Division.

April 23, 2001.

George A Lamarca, Justin E Lavan, Lamarca & Landry, West Des Moines, IA, for Peggy A Hill, plaintiff.

Helen C Adams, Dickinson Mackaman Tyler & Hagen, Des Moines, IA, for MCI Worldcom Communications, defendant.

OPINION, RULINGS PARTIALLY GRANTING AND PARTIALLY DENYING MOTION TO DISMISS, AND ORDER DISMISSING SOME OF PLAINTIFF'S CLAIMS WITH PREJUDICE

VIETOR, Senior District Judge.

Plaintiff Peggy A. Hill ("Hill") initially filed a one-count complaint against defendant MCI WorldCom Communications, Inc. ("MCI") for violation of the Electronic Communication Privacy Act ("ECPA"), 18 U.S.C. § 2702. On November 28, 2000, this court granted MCI's motion to dismiss but delayed dismissal of the complaint until December 8, 2000, to allow Hill an opportunity to amend her complaint to allege state law claims. *Hill v. MCI WorldCom Communications, Inc.*, 120 F.Supp.2d 1194 (S.D.Iowa 2000)[hereinafter *Hill I* ].

On November 29, 2000, Hill filed a three-count amended complaint that includes the ECPA claim and two state law claims. Jurisdiction is based on federal question and diversity of citizenship. MCI moves to dismiss the amended complaint for failure to state a claim, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).

### I.

In addressing a motion to dismiss, the allegations of the complaint must be taken as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### II.

The following facts are alleged in the amended complaint and, for purposes of this motion, are viewed as true. *Cruz,* 405 U.S. at 322, 92 S.Ct. 1079. On April 26, 1999, Hill purchased long distance telephone services through MCI. From that date on, Hill paid an additional amount of money to assure that her telephone number would be unlisted and that any other personal information would remain unpublished and confidential.

Beginning on June 19, 1999, an unidentified man ("X") began what would be a series of telephone calls to MCI, where he questioned MCI's customer service representatives about Hill's invoice/billing information, parties Hill called, addresses and phone numbers of parties Hill called, and "other confidential information." On June 19, 1999, MCI provided X a phone number Hill had called using MCI's long distance services. On June 22, 1999, X called MCI, changed Hill's calling plan for the second time, and obtained a phone number. Later on June 22, 1999, X called MCI and obtained two phone numbers. Still later on June 22, 1999, X called MCI, obtained a

phone number, and requested to change the calling plan. Again later on June 22, 1999, X called MCI and was "educated … on the bill." On June 23, 1999, X called MCI and obtained fifteen phone numbers and the addresses for those phone numbers from Hill's electronically stored long distance telephone records, and also received "other electronically stored information." Exhibit 1 attached to the amended complaint is MCI's records, which document over twenty instances of contact between MCI and X in a one week period.

On June 23, 1999, X called a close personal friend of Hill he located through one of the phone numbers divulged by MCI. Later, X was "put in touch" with Hill, who recognized X's voice as that of her ex-husband, who previously had harassed, stalked, and threatened her. On June 28, 1999, Hill received a photograph and a letter from X.

### III.

█ Hill alleges that MCI's actions violated her right of privacy. The right of privacy is defined as the "right … to be let alone, to live a life of seclusion, to be free from unwarranted publicity." *Bremmer v. Journal–Tribune Publ'g Co.*, 247 Iowa 817, 76 N.W.2d 762, 764 (1956). Iowa recognizes the following four theories of invasion of privacy: "Intrusion upon plaintiff's seclusion or solitude, or into his private affairs[;][p]ublic disclosure of embarrassing facts about the plaintiff[;][p]ublicity which places plaintiff in a false light in the public eye[; and] [a]ppropriation, for defendant's advantage, of the plaintiff's name or likeness." *Yoder v. Smith*, 253 Iowa 505, 112 N.W.2d 862, 863–64 (Iowa 1962) (quoting PROSSER, LAW OF TORT 637–39 (2d ed.1955)). These four theories have been adopted by the RESTATEMENT (SECOND) OF TORTS § 652A (1977). The Iowa

Supreme Court has "adopted the principles of the tort delineated in [the] Restatement," *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 291 (Iowa 1979), and therefore "it is reasonable to refer to the Restatement explanation of its elements." *Id.* at 301.

### A.

█ Hill alleges that MCI's disclosures intruded upon her seclusion. MCI argues that disclosure of information properly obtained does not state a claim of intrusion.

The Iowa Supreme Court has not thoroughly explained the elements of the intrusion theory. That court simply states that it requires "an intentional intrusion upon the solitude or seclusion of another which would be highly offensive to a reasonable person." *Winegard v. Larsen*, 260 N.W.2d 816, 822 (Iowa 1977); *see Stessman v. Am. Black Hawk Broad. Co.*, 416 N.W.2d 685, 687 (Iowa 1987). This begs the question of what conduct constitutes an intrusion.

█ "Intrude" means "to thrust oneself in without invitation, permission, or welcome." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir.1989)(citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1187 (1966)). "Intrusion" is defined as the act of "wrongfully entering upon, seizing, or taking possession of the property of another," WEBSTER'S NEW COLLEGIATE DICTIONARY 602 (1979), and occurs "when an actor 'believes or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.'" *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 876 (8th Cir.2000)(quoting *O'Donnell*, 891 F.2d at 1083). The definitions support MCI's position.

Though the *Restatement* does not define intrusion, *O'Donnell,* 891 F.2d at 1083, it does explain that the tort involves conduct of "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." RESTATEMENT (SECOND) OF TORTS § 652B. It "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." *Id.* "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined." *Id.* The *Restatement* supports MCI's argument.

Although Iowa case law has not directly addressed the issue, there is relevant language on the subject. *See Stessman,* 416 N.W.2d at 687–88 ("To film a person in a private dining room might conceivably be a highly offensive intrusion upon that person's seclusion."); *Lamberto v. Bown,* 326 N.W.2d 305, 309 (Iowa 1982)("Publication of information obtained by such intrusion is not a necessary element of the tort.")(citing RESTATEMENT (SECOND) OF TORTS § 652B); *Pulla v. Amoco Oil Co.,* 882 F.Supp. 836, 867 & n. 24 (S.D.Iowa 1994)("[T]he employer's interest must be balanced against the degree of intrusion resulting from the employer's methods to obtain the information in question."), *aff'd in part, rev'd in part by* 72 F.3d 648 (8th Cir.1995). One federal case applying Iowa law contains language that arguably supports Hill's position. *See Hanson v. Hancock County Mem'l Hosp.,* 938 F.Supp. 1419, 1436–37 (N.D.Iowa 1996)("Although it might be highly offensive for the Hospital to disclose the identity of a patient to a member of the general public who happened to be the patient's employer, it is not reasonable to suppose that requests for information, even information confiden-

tial as to outsiders, by persons on the staff of the Hospital, or disclosures to such persons, would be equally offensive."). The court, however, did not directly address the issue and ultimately granted summary judgment to the defendant on the claim. It seems clear that Iowa case law supports MCI's position.

Hill relies on case law from other states. Iowa law, however, controls. In any event, only two non-Iowa cases out of twelve that I have found support Hill's position. *See Tobin v. Mich. Civil Serv. Comm'n,* 416 Mich. 661, 331 N.W.2d 184, 189–90 (1982); *Humphers v. First Interstate Bank of Or.,* 68 Or.App. 573, 684 P.2d 581, 583–84 (1984), *aff'd in part, rev'd in part by* 298 Or. 706, 696 P.2d 527, 533 (1985)(en banc).

Because I conclude that under Iowa law disclosure of properly obtained information does not state a claim for invasion of privacy under the theory of intrusion upon seclusion, MCI's motion will be granted as to this claim.

### B.

Hill alleges that MCI publicly disclosed private facts about her. MCI argues that disclosure to one person is insufficient publicity to state a claim.

 As a general matter, MCI's argument is correct.

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

*Winegard,* 260 N.W.2d at 823 (quoting RESTATEMENT (SECOND) OF TORTS § 652D).

Publicity includes publication in a newspaper, posting in a window on a public street, or crying it aloud in the highway, *Yoder,* 112 N.W.2d at 864, and generally requires communication to the public at large, to a large group of people, or to a person or persons so that it is substantially certain to become one of public knowledge. *See Hanson,* 938 F.Supp. at 1437–38; *Tureen v. Equifax, Inc.,* 571 F.2d 411, 419 (8th Cir.1978)(Missouri law); *see also Hill v. Hamilton County Pub. Hosp.,* 71 F.Supp.2d 936, 951–52 (N.D.Iowa 1999)(discussing publicity in context of a false light claim).

In *Yoder,* the Iowa Supreme Court stated, "[Publicity does not include communication] to the plaintiff's employer, or to any other individual, or even to a small group, *unless there is some breach of contract, trust, or confidential relation which will afford an independent basis for relief.*" 112 N.W.2d at 864 (emphasis added)(quoting Prosser, *Privacy,* 48 CAL. L. REV. 389, 393–94 (1960)). Iowa courts have not expounded on the italicized language. Language from one court applying Iowa law does not support Hill's position. *See Hanson,* 938 F.Supp. at 1437–38 ("Hanson has not alleged 'publicity' at all in her complaint, nor for that matter in her brief, but only communication to a small group. Nor has she pointed to any part of the record demonstrating that the Hospital employees who learned of her stay, or the Hospital employees altogether, are so numerous that Tulp's communication to them, assuming it occurred, would constitute 'publicity.'")(citing RESTATEMENT (SECOND) OF TORTS § 652D cmt. a).

Other courts have addressed the issue directly. *See Chisholm v. Foothill Capital Corp.,* 3 F.Supp.2d 925, 940 (N.D.Ill.1998)(concluding disclosure of plaintiff's affair to two potential clients of plaintiff's employer could satisfy the

publicity requirement); *McSurely v. McClellan,* 753 F.2d 88, 112 (D.C.Cir.1985)(Kentucky law)("However, the publication requirement also may be satisfied by proof of disclosure to a very limited number of people when a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed."); *Miller v. Motorola, Inc.,* 202 Ill.App.3d 976, 148 Ill.Dec. 303, 560 N.E.2d 900, 903 (1990)(adopting position that "public disclosure requirement may be satisfied by proof that the plaintiff has a special relationship with the 'public' to whom the information is disclosed," and concluding that proof that plaintiff's medical condition was disclosed to her fellow employees satisfied the requirement); *Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522, 531 (1977)("Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom the individual is not concerned obviously is not a 'serious interference' with plaintiff's right to privacy .... An invasion of plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure, or a particular public such as fellow employees, club members, church members, family, or neighbors, if the person were not a public figure."), *overruled on other grounds by Bradley v. Bd. of Educ. of the Saranac Cmty. Schs.,* 455 Mich. 285, 565 N.W.2d 650 (1997); *Montgomery Ward v. Larragoite,* 81 N.M. 383, 467 P.2d 399, 400–01 (1970)(affirming verdict for plaintiff for invasion of privacy where defendant contacted plaintiff's mother and brother about his overdue credit card); *Fernandez–Wells v. Beauvais,* 127 N.M. 487, 983 P.2d 1006, 1009 (N.M.App. 1999)("Some jurisdictions have adopted

an exception to the widespread publicity requirement ... where the plaintiff and the 'public' receiving the private information enjoy a special relationship ...."); *Hillman v. Columbia County,* 164 Wis.2d 376, 474 N.W.2d 913, 920 n. 10 (Wis.App.1991)("[T]here is authority for finding 'publicity' where 'a special relationship exists between the plaintiff and the "public" to whom information has been disclosed.'")(quoting *Miller,* 148 Ill. Dec. 303, 560 N.E.2d at 903). *But see Taylor v. NationsBank N.A.,* 128 Md. App. 414, 738 A.2d 893, 897–98 (1999)(stating, on facts similar to this case, "As Professor Prosser pointed out, no matter how offensive the intrusion, the communication must be to a group larger than just a few persons.").

■ Though the *Restatement* rejects the exception, *see* RESTATEMENT (SECOND) OF TORTS § 652D cmt. ("[I]t is not an invasion of the right to privacy ... to communicate a fact ... to a single person, or even to a small group of persons."), Iowa courts are obviously not bound to follow it. *See Handeland v. Brown,* 216 N.W.2d 574, 576 (Iowa 1974)(rejecting RESTATEMENT (SECOND) OF TORTS § 494's rule of imputed negligence). Iowa has adopted the *Restatement*'s privacy tort principles, *see Howard,* 283 N.W.2d at 291, but principles are flexible guides to aid in the resolution of cases. *See McSurely,* 753 F.2d at 112 ("Kentucky has adopted the Restatement's articulation of privacy tort principles but has continued to emphasize the need for flexibility in the application of theory to conduct."). Also, the Iowa Supreme Court's recitation of the tort is different from the *Restatement*'s. *Compare Yoder,* 112 N.W.2d at 864 ("Public disclosure of embarrassing facts about plaintiff."), *with* RESTATEMENT (SECOND) OF TORTS § 652A(2)(c)("[U]nreasonable publicity given to the other's private life."). The

Michigan Supreme Court has found the difference significant. *See Beaumont,* 257 N.W.2d at 531.

■ If the *Restatement*'s widespread publicity requirement were strictly applied to every conceivable set of facts, it would undermine general privacy law's goal of securing a person's "right ... to be let alone, to live a life of seclusion, [and] to be free from unwarranted publicity." *Bremmer,* 76 N.W.2d at 764; *see Beaumont,* 257 N.W.2d at 531; *Hawley v. Prof'l Credit Bur., Inc.,* 345 Mich. 500, 76 N.W.2d 835, 841 (1956)(Smith, J., dissenting)("The common denominator in all of these cases is an unreasonable and serious interference with the plaintiff's interest in not having his affairs known to others. The wrong depends not upon conduct otherwise tortious ... nor does it turn upon breach of confidence, or truth or untruths, or an arithmetical measure of the numbers who witnessed the exposure, or the particular method thereof, whether by placard, or by letter. The wrong is done when the curtain of privacy is lifted.") (citations omitted)(cited by *Beaumont,* 257 N.W.2d at 529); *Beauvais,* 983 P.2d at 1009 ("The purpose of the special-relationship exception, it seems, is to address circumstances in which the limited 'public' to which the disclosure is made is the portion of the public whose opinion matters most to the injured party."). This is especially true on the facts alleged in this case. Adoption of the confidential relation exception would fit logically and comfortably within general privacy tort law and better protect people's privacy rights. *See Yoder,* 112 N.W.2d at 864 (noting that three of the privacy theories, including the public disclosure theory, "are primarily concerned with the *protection of a mental interest,* and that they are only a phase of the larger problem of the protection of peace

of mind against unreasonable disturbances")(emphasis added). The reasoning in support of the exception, as discussed in *Beaumont,* is compelling, and the exception is consistent with the current trend on this issue and with the *Yoder* court's confidential relation language. To the extent that *Hanson* suggests the contrary, I decline to follow it. I conclude that under Iowa law disclosure of private facts about a plaintiff to a third party may state a claim for invasion of privacy under the theory of public disclosure of embarrassing facts if there is a confidential relationship between the plaintiff and the third party.

 The next issue is whether Hill's allegations state a claim under the tort. Disclosure of the phone numbers and addresses of Hill's friends to a person who previously stalked, threatened, and harassed Hill would clearly be extremely embarrassing, highly offensive, and potentially dangerous to a reasonable person in Hill's situation. *See Winegard,* 260 N.W.2d at 823. The information disclosed was not of a legitimate concern to X. *See id.; cf. Yoder,* 112 N.W.2d at 864–65. This court, therefore, cannot say beyond doubt that Hill cannot prove any set of facts in support of her claim that would entitle her to relief. MCI's motion will be denied as to this claim.

### IV.

 Hill alleges that MCI's conduct was negligent. MCI argues that Hill failed to properly plead facts showing that it owed Hill a duty to maintain the information in confidence.[1]

 FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) requires the pleading to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." "The clear purpose of the rule is to give notice to the other party and not to formulate issues or fully summarize the facts involved." *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.,* 395 F.2d 388, 390 (8th Cir.1968).

 The complaint alleges that Hill paid MCI a certain amount of money to keep her telephone number and other information confidential, Complaint ¶¶ 11, 52, that MCI divulged the information to an unauthorized person, *id.* ¶¶ 15, 53, and that MCI was negligent in five specific ways. *Id.* ¶¶ 53(a)-(e). In Iowa, a duty, for purposes of negligence tort law, can arise by contract. *See Khan v. Heritage Prop. Mgmt.,* 584 N.W.2d 725, 728 (Iowa Ct.App.1998)(citing *AMCO Ins. Co. v. Stammer,* 411 N.W.2d 709, 713 (Iowa Ct. App.1987)). It is clear that the complaint gives MCI fair notice of the allegation that it had a contractual duty to maintain the information in confidence, and that it breached its duty by the alleged disclosures. The motion will be denied as to this claim.

### V.

 MCI argues that Hill's requests for indirect, special, incidental, consequential, exemplary, and punitive damages are barred by the limitation of liability section in MCI's federally filed tariff. In other words, MCI contends that the damages requests are barred by the filed rate doctrine.

MCI concedes that the doctrine does not bar Hill's state law *claims, see Ashley v. S.W. Bell Tel. Co.,* 410 F.Supp. 1389, 1393 (W.D.Tex.1976)("[S]tate tort law of inva-

---

1. At oral argument, MCI asserted that it does not make confidentiality contracts with customers but rather local telephone companies do. It reasons, therefore, that no contract existed under which a duty could arise. For purposes of this motion, however, Hill's allegation that she entered into a confidentiality contract with MCI is presumed to be true.

sion of privacy was not preempted by the federal scheme, and no attempt was made to impose uniformity in this area of state law."), but rather the *remedies* she seeks. It relies on paragraph 4.02 under section B of the tariff, which reads, "In no event shall MCI be liable to customer for any indirect, special, incidental, consequential, exemplary or punitive loss or damage of any kind, including lost profits ... by reason of any act or omission in its performance under this tariff." MCI contends that maintaining customer information in confidence constitutes "performance under this tariff" and that the limitation of liability provision applies to the requested damages regardless of the claimed violation for which they are sought.

Initially, it does not appear that the Communications Act even covers services or charges for maintaining customer account information in confidence. The Act reads that "[c]harges or services ... include charges for, or services in connection with, the use of common carrier lines of communication ...." 47 U.S.C. § 202(b). Any charges or services contained in this definition must be filed with the tariff. *See id.* § 203(a) ("Every common carrier ... shall ... file with the Commission ... schedules showing all charges for itself, and show[ ] the classifications, practices, and regulations affecting such charges."). MCI has not directed this court to any provision in the tariff that addresses customer account matters. Failure of the tariff to address a service or charge supports the conclusion that the service or charge is not covered by the Act, but rather is a topic that may be the substance of "other contractual obligations." *See AT & T Co. v. Central Office Tel., Inc.,* 524 U.S. 214, 230, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998)(Rehnquist, C.J., concurring). If a service or charge does not come within the Act's scope (and thus

is not required to be filed with the tariff) then damages related to those services or charges are not barred. *See* 47 U.S.C. § 414 ("Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."); *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d at 711 (holding plaintiff's tort claim not preempted by filed rate doctrine because claim alleged release of confidential information, which was illegal under federal law, and thus was "not derivative of a contract claim [and did] not concern the provision of services which are covered by the filed tariff [but rather was] outside the scope of the tariff and not derivative of any phone services"); *see also In re Long Distance Telecomms. Litig.,* 831 F.2d 627, 634 (6th Cir.1987)(holding failure-to-disclose claim not preempted because it did not "relate[ ] to rates or service"); *Minnesota v. Worldcom, Inc.,* 125 F.Supp.2d 365, 371–72 (D.Minn.2000)(holding claim for deceptive and false advertising not preempted because it does not "require[ ] a determination whether the rates ... are valid or enforceable[,][ ]or [whether the] filed rates were improper or unreasonable[, and] does not implicate the purpose underlying the rate-filing provisions of the FCA-the prevention of carriers from 'misquoting' their rates in order to offer some (but not all) consumers a discount or rebate").

Chief Justice Rehnquist's concurring opinion in *Central Office* is particularly relevant to this case. He noted that a tariff only governs "the terms by which the common carrier provides ... services to its customers." 524 U.S. at 229, 118 S.Ct. 1956. "In order for the filed rate doctrine to serve its purpose, therefore, it need preempt only those suits that seek to alter the terms and conditions provided for in the tariff." *Id.*

[A] tariff does not govern ... the entirety of the relationship between the common carrier and its customers. For example, it does not affect whatever duties state law might impose on petitioner to refrain from intentionally interfering with respondent's relationships with its customers by means other than failing to honor unenforceable side agreements, or to refrain from engaging in slander or libel, or to satisfy other contractual obligations.

*Id.* at 230, 118 S.Ct. 1956. He emphasized that "the filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff. It does not serve as a shield against all actions based in state law." *Id.* at 230–31, 118 S.Ct. 1956.

If MCI's tariff addressed the service or charges related to maintaining customer account information in confidence, then the damages that Hill requests that are inconsistent with the tariff's provisions would be barred by the filed rate doctrine. *See Marcus v. AT & T Corp.*, 138 F.3d 46, 60–61 (2d Cir.1998) (holding plaintiff's claims for damages barred by filed rate doctrine because those "who were able to prove their claims and recover damages would effectively receive a discounted rate for phone service over other AT & T customers," which would undermine the congressional goal of uniform rate regulation); *Access Telecom*, 197 F.3d at 711 ("Under the filed-rate doctrine, federal law preempts claims concerning the price at which service is to be offered, and ... claims concerning the services that are offered.")(citing *Central Office*, 524 U.S. at 220–26, 118 S.Ct. 1956). MCI cannot point to any provision of the tariff, however, that addresses the service or charges for customer account matters. Furthermore, Hill's recovery of damages would not have the

same qualitative effect on rates as the recovery of damages discussed in *Marcus*. *See* 138 F.3d at 60–61. MCI's argument that Hill's recovery of damages would result in increased prices for services that would be passed on to customers proves too much; such an argument, if used to support application of the doctrine here, would preclude damages for any tort committed by a communication carrier against its customers no matter how unrelated the tort was to the carrier's business. The motion will be denied as to the damages requested by Hill.

## VI.

The ECPA claim contained in count I must be dismissed. *See Hill I,* 120 F.Supp.2d 1194. It is **ORDERED** that count I be dismissed with prejudice.

Count II does not state a claim for intrusion upon seclusion; MCI's motion, therefore, is **GRANTED** as to that claim, and it is **ORDERED** that the intrusion-upon-seclusion claim in count II be dismissed with prejudice.

Count II states a claim for public disclosure of embarrassing facts; MCI's motion, therefore, is **DENIED** as to that claim.

Count III states a claim for negligence; MCI's motion, therefore, is **DENIED** as to that claim.

Hill's damages requests are not barred by the filed rate doctrine; MCI's motion, therefore, is **DENIED** as to that issue.