738 A.2d 893

**Garfield TAYLOR**

v.

**NATIONSBANK N.A.**

**No. 1822, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Sept. 9, 1999.

Reconsideration Denied Nov. 9, 1999.

Samuel Sperling (Leonard J. Sperling and Sperling and Framm on the brief), Baltimore, for appellant.

Matthew S. Sturtz (Jefferson V. Wright and Miles & Stockbridge P.C. on the brief), Baltimore, for appellee.

Argued before WENNER, HARRELL and SONNER, JJ.

SONNER, Judge.

This is an appeal from the granting of a motion for summary judgment in a suit for sixty million dollars in damages filed by a depositor against the bank in which he maintained a checking account. Appellant, Garfield Taylor, sought damages from the bank in the Circuit Court for Baltimore City for revealing his unlisted phone number to another depositor, a complete stranger, although a fellow employee where he worked. He claimed that the revelation was an invasion of his privacy as well as a breach of confidentiality protected by contract, and that the revelation caused him to suffer severe psychological and physiological distress for which he sought treatment. The lower court held that appellant had failed to present a viable cause of action and granted summary judgment to appellee. As explained below, we shall affirm.

In December of 1996 or January of 1997, Walter Scott and appellant, two employees of Fannie Mae,[1] but who were strangers to one another, decided to change the method by which they received their wages and have their pay deposited directly with their bank, NationsBank, rather than receive paychecks, as had been their former practice. Fannie Mae sent Scott a payment advice stub for his initial direct deposit on January 30, 1997. Scott somehow learned that his account did not show the $2,013.92 he knew was due him, so, on Saturday, February 1, he called NationsBank to try to determine what had happened. During a conversation with the bank's customer service representative, he mentioned that the

---

1. Fannie Mae is a government subsidized enterprise that assists low- and middle-income families secure home mortgages.

account number on his stub was not the same number as his checking account. The customer service representative then determined that the deposit from Fannie Mae had gone into someone else's account—the one maintained by appellant.

Any correcting of the error in the accounts would have had to await the opening of the bank the following Monday morning when NationsBank could contact Fannie Mae. Scott's rent was due on February 5 th and he feared that, if the person in whose account his money had been wrongly deposited withdrew it, he would be short his rent payment. He solicited help from the customer service representative as to some means to protect his funds from withdrawal and received the telephone number of appellant with the suggestion that he call him. He did so and, in a short conversation, explained the situation to appellant and requested as well that he not spend any of the pay that had been wrongly deposited. On the following Monday, Fannie Mae corrected the error and NationsBank debited appellant's account and properly credited Scott's account.

The problem for Scott ended there, but appellant, feeling wronged, filed suit against NationsBank and alleged that the phone call by someone using his unlisted number caused him "substantial harm," specifically, "post traumatic stress disorder" and "severe psychological and physical distress," and asked for sixty million dollars in damages. After conducting discovery, both appellant and NationsBank filed for summary judgment. The lower court, after a hearing, granted Nations-Bank's motion and said, while ruling, "I don't believe that under the undisputed facts presented by this case that it presents a viable cause of action ... The case is hereby dismissed."

A court should grant a motion for summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Maryland Rule 2–501(e) (1998). In reviewing the granting of a motion for summary judgment, the proper standard of review is whether the trial court was legally correct. *Good-*

*wich v. Sinai Hosp. of Baltimore, Inc.*, 343 Md. 185, 204, 680 A.2d 1067 (1996); *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993).

Appellant's suit first alleged that NationsBank was liable for breach of contract, because the depositor's agreement specifically provided that the information that he had given to the bank would be kept private. NationsBank, on the other hand, maintains, first, that it had specific authority to release the information and, second, that the contract specifically relieved the bank from any liability for disclosures to third persons. There were two sets of depositor's agreements that the appellant entered into. First, there was the agreement appellant signed when he opened an account with Sovran Bank, a bank which NationsBank later succeeded. That agreement provided in pertinent part:

> Disclosure of Account Information. The Bank will disclose information to third parties about your account or any transaction thereon in certain circumstances, including, but not limited to, situations where it is necessary for completing any transaction, for complying with government agency or court orders, or for verifying the existence or condition of your account for a third party such as a credit bureau or a merchant or for reporting losses incurred by the Bank in maintaining your account to its subsidiaries and affiliates.

Then, later, he signed an agreement with NationsBank. That agreement provided:

> Account Information ... You acknowledge that we provide for your convenience various methods by which you can obtain information on your accounts, and that our reasonable security measures cannot absolutely ensure against "unauthorized" inquiries. You therefore agree that we will not be responsible for the release of information to anyone not authorized by you who has gained possession of your ATM access device or who has learned your identifying characteristics such as personal identification number (PIN), account number, or social security number....

We hold that neither depositor's agreement is controlling under the uncontradicted facts of this dispute. The

pertinent provisions in both agreements concern the disclosure of a depositor's **account information**. An unlisted telephone number, however, hardly qualifies as account information. Rather, it represents an entirely incidental matter, which falls outside the scope of the contractual language in the depositor's agreements. The lower court was correct in finding that appellant did not have a viable cause of action for breach of contract.

Appellant, however, maintains that this Court's holding in *Suburban Trust Co. v. Waller*, 44 Md.App. 335, 408 A.2d 758 (1979), controls the outcome of the present dispute. In that case, Maurice Waller deposited $800 in his account at the Suburban Trust Company in Montgomery County. The deposit consisted exclusively of sequentially numbered fifty and one hundred dollar bills. Finding the nature of the deposit somewhat suspicious, the bank teller informed his supervisor, who in turn referred the matter to the bank's security department. An assistant security officer contacted the Montgomery County Police Department and learned that there had been a recent residential burglary, in which the perpetrator had stolen $3,000 in fifty and one hundred dollar bills. The assistant security officer then disclosed Waller's name, address, description, and employment to the police, who arrested him shortly thereafter. The charges, however, were eventually dropped, and Waller filed suit against the bank, alleging that the bank's conduct amounted to an invasion of privacy and a breach of confidentiality. The trial court found in favor of the bank, but this Court reversed and held:

> [A] bank depositor in this State has a right to expect that the bank will, to the extent permitted by law, treat as confidential, all information regarding his account and any transaction relating thereto. Accordingly, we hold that, absent compulsion by law, a bank may not make any disclosures concerning a depositor's account *without the express or implied consent of the depositor.*

*Waller*, 44 Md.App. at 344, 408 A.2d 758 (emphasis added).

In this case, it is undisputed that NationsBank disclosed appellant's name and telephone number to another customer.

*Waller*, however, indicates plainly that such a disclosure is improper only in the absence of "the express or implied consent of the depositor." *Id.* Here, the Deposit Agreement expressly provides that NationsBank will not be responsible for the release of information to a third party who has gained possession of the depositor's account number. NationsBank's customer service representative may not have exercised the best judgment when he released appellant's name and telephone number to Scott. He could have used his knowledge of the unlisted number to call Scott himself. Nevertheless, it is uncontradicted that Walter Scott, through no fault of Nations-Bank, possessed appellant's account number not from Nations-Bank, but from reading his payment advice stub. We further note that nowhere in the *Waller* opinion did we address the legality of divulging the specific information at issue in the present appeal, i.e., an unlisted telephone number.

■ We now turn to the issue of whether the release of the unlisted telephone number was tortious and a violation of appellant's protected right of privacy. An action for invasion of privacy, in order to be viable, must allege that the matter disclosed is a private fact and that the disclosure was made public. *Pemberton v. Bethlehem Steel Corp.*, 66 Md.App. 133, 166, 502 A.2d 1101 (1986). In other words, the plaintiff must be able to show more that just a desire to keep a particular fact private, but that the matter revealed must be a personal matter that would be highly offensive for a reasonable person to have disclosed to others. William L. Prosser, *Privacy*, 48 CAL. L.REV. 383, 393–396 (1960).

■ Professor Prosser, in his seminal article describing the tort, explained that the private matter made public needs to have the same overtones of mental distress as in defamation. It must be one affecting reputation, which would be offensive and objectionable to a reasonable person of ordinary sensibilities. *Id.* Here, the supposedly private fact, the unlisted telephone number, is hardly the kind of matter that a reasonable person would suffer mental distress upon learning that it had been revealed to one other person, in this case, a co-

worker, who used it by calling to request that his earned wages, which had been mistakenly deposited in the appellant's account, not be withdrawn over the weekend. The particular number, the fact of its being unlisted or anything else about a telephone number, does not achieve the level of a private fact that, if revealed, could cause a reasonable person the kind of mental distress that resembles the distress suffered by victims of defamation. In order to be actionable, the disclosure must be about private facts that would be highly offensive and objectionable to a person of ordinary sensibilities. The revelation of an unlisted telephone number is unlikely to offend a person of ordinary sensibilities, and to trespass substantially upon another's right to be free from unwarranted publicity, the right to live without interference by the public into matters with which the public is not properly concerned, the heart of the right to privacy. *Brents v. Morgan,* 221 Ky. 765, 299 S.W. 967, 969–70 (1927). *See also Munley v. ISC Financial House, Inc.* 584 P.2d 1336 (Ok.1978); *Froelich v. Werbin,* 219 Kan. 461, 548 P.2d 482 (1976); *McLain v. Boise Cascade Corp.,* 271 Or. 549, 533 P.2d 343 (1975); *Everett v. Carvel Corp.,* 70 Misc.2d 734, 334 N.Y.S.2d 922 (1972); *Horstman v. Newman,* 291 S.W.2d 567 (Ky.1956).

Even if the unauthorized revelation of an unlisted telephone number could somehow be considered a wrong that could cause an injury similar to an injury from defamation, the revelation to a single person, as NationsBank did here, would not generate sufficient intrusion to constitute a violation of one's right to privacy. As Professor Prosser pointed out, no matter how offensive the intrusion, the communication must be to a group larger than just a few persons. *Beard v. Akzona, Inc.,* 517 F.Supp. 128, 132 (E.D.Tenn.1981); *Lemnah v. American Breeders Service, Inc.,* 144 Vt. 568, 482 A.2d 700, 704 (1984). Comment (a) to Section 652 of the Second Restatement clarifies the distinction between public disclosure of a private matter and the publication that is a part of the tort of defamation.

The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life

of the individual. "Publicity" as it is used in this Section, differs from "publication" as that term is used in § 577 in connection with liability for defamation. "Publication" in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity", on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

■ We hold, therefore, that the bank's erroneous disclosure to a depositor of the unlisted telephone number of another depositor ordinarily is not an invasion of privacy that is actionable. The lower court was correct in holding that the uncontested facts in this case did not give rise to a viable cause of action, and the granting of the motion for summary judgment was proper.

**JUDGMENT AFFIRMED;**

**APPELLANT TO PAY COSTS.**