776 A.2d 645

Garfield TAYLOR,

v.

NATIONSBANK, N.A.

No. 139, Sept. Term, 1999.

Court of Appeals of Maryland.

July 17, 2001.

Samuel Sperling (Law Offices of Sperling & Framm, on brief), Baltimore, for petitioner.

Matthew S. Sturtz (Jefferson V. Wright of Miles & Stockbridge, P.C., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, ROBERT L. KARWACKI and THEODORE G. BLOOM (retired, specially assigned), JJ.

BELL, Chief Judge.

In this case, we are asked to decide whether a banking institution's disclosure of the name and unlisted telephone number of one of its depositors, which, under the circumstances, had the effect of identifying that depositor's checking account number to another depositor, with knowledge of their respective identities, constitutes a violation of Maryland Code (1980, 1998 Replacement Volume), §§ 1–301–1–305 of the Financial Institutions Article, the depositor's contract with the banking institution and the common law. Garfield Taylor (the "petitioner"), filed an action against NationsBank, N.A.[1] (the "respondent"), alleging breach of contract, breach of privacy and breach of legally guaranteed confidentiality,[2] premised on one of the respondent's agents having identified his private

---

[1] NationsBank, N.A. has since merged with Bank of America; nevertheless, for the sake of clarity, we shall continue to refer to the respondent as NationsBank.

[2] The petitioner also pled loss of consortium, but, responding to the respondent's Cross–Motion for Summary Judgment, agreed that it should be dismissed.

checking account by disclosing the petitioner's name and by giving his unlisted phone number to one of the petitioner's co-workers. The Circuit Court for Baltimore City granted the respondent's motion for summary judgment, and the Court of Special Appeals affirmed, holding, as to the breach of contract action that the disclosure was a violation of neither the petitioner's right to privacy nor his contract with the respondent. *Taylor v. NationsBank*, 128 Md.App. 414, 419–22, 738 A.2d 893, 896–98 (1999). Having granted the petitioner's Petition for Writ of Certiorari, 357 Md. 481, 745 A.2d 436 (2000), we shall reverse the judgment of the intermediate appellate court.

## I.

The petitioner and Walter Scott, both employees of the Federal National Mortgage Association ("Fannie Mae"), with checking accounts at the respondent banking institution, signed up with their employer to have their paychecks deposited directly into their checking accounts. Although they both received pay advice stubs, the account number on Mr. Scott's pay advice stub, as it was subsequently discovered, was not his account number. Moreover, Mr. Scott learned that his pay had not been deposited to his account, prompting him to call the respondent. During the conversation with a service representative, he learned both that the account number on the pay advice stub was not his and that his paycheck had been deposited into that account. The customer service representative identified the account into which the funds were deposited, and so informed Mr. Scott, as one belonging to the petitioner. After a discussion of what could be done to protect Mr. Scott's money-it was a Saturday and, thus, the earliest the respondent could correct the error was Monday, the customer service representative gave Mr. Scott the petitioner's unlisted home telephone number, suggesting that he might call the petitioner and explain the situation. Mr. Scott did call the petitioner at home and, in a short conversation, conveyed his concerns to the petitioner.

Alleging that, as a "private person by nature" the ensuing unexpected conversation "caused him a great deal of mental anguish and mental pain, and a severe shock to his nervous system," the petitioner filed suit against the respondent in the Circuit Court for Baltimore City. Both parties moved for summary judgment. Following a hearing, the trial court granted the respondent's motion and denied the petitioners', concluding, "I don't believe that under the undisputed facts presented by this case that it presents viable causes of action.... The case is hereby dismissed."

As indicated, the judgment was affirmed by the intermediate appellate court.[3] With regard to the breach of contract count, the court held that the depositor agreements which the petitioner signed were not controlling and that the trial court correctly granted summary judgment. 128 Md.App. at 418, 738 A.2d at 896. Focusing on the disclosure of the petitioner's unlisted phone number, it concluded that "[a]n unlisted telephone number ... hardly qualifies as account information," the concern of the depositor's agreements. The Court of Special Appeals also rejected the petitioner's argument that *Suburban Trust Co. v. Waller,* 44 Md.App. 335, 408 A.2d 758 (1979) controlled the resolution of the case. Noting that *Waller* makes clear that disclosure of a depositor's name and telephone number to another customer is improper only in the absence " 'of the express or implied consent of the depositor,' " 128 Md.App. at 420, 738 A.2d at 896 (quoting *Waller,* 44 Md.App. at 344, 408 A.2d at 764), and that the depositor agreement in this case exempted the respondent from responsibility for the release of information to a third person when the third person has acquired, and is in possession of, the depositor's account number, *id.,* the court determined that "it is uncontradicted that Walter Scott, through no fault of NationsBank, possessed appellant's account number not from NationsBank, but from reading his payment advice stub." *Id.* at

---

**3.** The Court of Special Appeals did not address whether the disclosures made by the respondent violated Maryland Code (1980, 1998 Replacement Volume), §§ 1–301–1–305 of the Financial Institutions Article.

420, 738 A.2d at 896–97. Once again, the court focused on the disclosure of the unlisted phone number, pointing out that *Waller* did not address the legality of divulging that kind of information. *Id.*

Relying upon *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 166, 502 A.2d 1101, 1118 (1986) and Professor Prosser's seminal article describing the tort, William L. Prosser, Privacy, 48 Cal.L.Rev. 383, 393–396 (1960), the Court of Special Appeals affirmed the trial court's grant of the respondent's motion for summary judgment with regard to the count of the complaint alleging invasion of privacy. *Id.* at 420–422, 738 A.2d at 896–98. Thus, aware that, for an action for invasion of privacy to be maintained, there must be public disclosure of a private matter, the court explained:

> "In other words, the plaintiff must be able to show more that just a desire to keep a particular fact private, but that the matter revealed must be a personal matter that would be highly offensive for a reasonable person to have disclosed to others."

*Id.* at 420, 738 A.2d at 897. As to whether, in this case, a private matter had been disclosed, it reasoned:

> "Here, the supposedly private fact, the unlisted telephone number, is hardly the kind of matter that a reasonable person would suffer mental distress upon learning that it had been revealed to one other person, in this case, a co-worker, who used it by calling to request that his earned wages, which had been mistakenly deposited in the appellant's account, not be withdrawn over the weekend. The particular number, the fact of its being unlisted or anything else about a telephone number, does not achieve the level of a private fact that, if revealed, could cause a reasonable person the kind of mental distress that resembles the distress suffered by victims of defamation. In order to be actionable, the disclosure must be about private facts that would be highly offensive and objectionable to a person of ordinary sensibilities. The revelation of an unlisted telephone number is unlikely to offend a person of ordinary

sensibilities, and to trespass substantially upon another's right to be free from unwarranted publicity, the right to live without interference by the public into matters with which the public is not properly concerned, the heart of the right to privacy.

\* \* \* \*

"Even if the unauthorized revelation of an unlisted telephone number could somehow be considered a wrong that could cause an injury from defamation, the revelation to a single person, as NationsBank did here, would not generate sufficient intrusion to constitute a violation of one's right to privacy."

*Id.* at 420–21, 738 A.2d at 897 (internal citations omitted).

## II.

At issue in this case is the propriety of the court's grant of summary judgment in favor of the respondent. It is resolved by reference to Maryland Rule 2–501 and the cases that have construed it. This Court has made clear that "[t]he purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried," *Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 675, 766 A.2d 617, 624 (2001); *Frederick Road Ltd. Partnership v. Brown & Sturm,* 360 Md. 76, 93, 756 A.2d 963, 972 (2000), and, therefore, it is not a substitute for trial. *Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 205, 680 A.2d 1067, 1077 (1996). Thus, Rule 2–501(e) provides that a trial judge may grant summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that party in whose favor judgment is entered is entitled to judgment as a matter of law." A material fact is " 'a fact the resolution of which will somehow affect the outcome of the case.' " *Jones v. Mid–Atlantic Funding Co.,* 362 Md. at 675, 766 A.2d at 624 (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608, 614 (1985)). In making that determination, the evidence, and all inferences therefrom, are viewed in the light most favorable to the nonmoving party. *Natural Design, Inc.*

*v. Rouse Co.,* 302 Md. 47, 62, 485 A.2d 663, 671 (1984). Evidentiary matters, credibility issues, and material facts which are in dispute cannot properly be disposed of by summary judgment. *See Pittman v. Atlantic Realty Co.,* 359 Md. 513, 536, 754 A.2d 1030, 1042 (2000) (recognizing that "Maryland law ... has not viewed the function of summary judgment to be determining whether an issue is genuine based on credibility.").

An appellate court's review of the grant of summary judgment involves the determination whether a dispute of material fact exists, *Gross v. Sussex, Inc.,* 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); *Beatty v. Trailmaster Products,* 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993), and "whether the trial court was legally correct." *Heat & Power Corporation v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202, 1206 (1990) (citations omitted). That the parties file cross-motions for summary judgment is not dispositive of the absence of a genuine dispute of material fact. In that event, as indeed is the case whenever a motion for summary judgment is filed, the court must assess each party's motion on its own merits, drawing all reasonable inferences against the moving party. *Natural Design,* 302 Md. at 62, 485 A.2d at 671.

### III.

Although Breach of Privacy was one of the counts in the Complaint that he filed against the respondent, *see* Count II, and one of the issues addressed by the Court of Special Appeals in affirming the trial court's grant of summary judgment, the petitioner does not argue its applicability in this Court, thus refraining from challenging the intermediate appellate court's ruling in that regard. Instead, he confines his challenge to the other two issues the Court of Special Appeals decided—whether by making the disclosures at issue, the respondent breached its contract with the petitioner and violated its common law duty of confidentiality—and one which was raised in the brief filed with the Court of Special Appeals

and in the Petition for Writ of Certiorari, *see Grayson v. State,* 354 Md. 1, 9, n. 1, 728 A.2d 1280, 1284, n. 1 (1999) (in a case decided by the Court of Special Appeals, ordinarily the issues before this Court are those set forth in the certiorari petition, not the briefs); Maryland Rule 8–131(b) (whether the disclosures violated the statutory prohibition on the release of account information), but which that court did not address.

 To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. *See Continental Masonry Co., Inc. v. Verdel Const. Co., Inc.,* 279 Md. 476, 480, 369 A.2d 566, 569 (1977). It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages. *Hooton v. Kenneth B. Mumaw Plumbing & Heating Co., Inc.,* 271 Md. 565, 572–73, 318 A.2d 514, 518 (1974); *Asibem Assoc., Ltd. v. Rill,* 264 Md. 272, 276, 286 A.2d 160, 162 (1972); *Rotwein v. Bogart,* 227 Md. 434, 438, 177 A.2d 258, 260 (1962); *Gilbert Const. Co. v. Gross,* 212 Md. 402, 412, 129 A.2d 518, 523 (1957); *Envelope Co. v. Balto. Post Co.,* 163 Md. 596, 606, 163 A. 688, 692 (1933); *see Mallis v. Faraclas,* 235 Md. 109, 116, 200 A.2d 676, 680 (1964).

The breach of contract count is premised on the depositor agreements that the petitioner entered into with the respondent, and its predecessor, prohibiting the disclosure of the information that the respondent disclosed or, stated differently, providing that the information that the petitioner gave to the bank would be kept private. In effect when the disclosures at issue in this case were made, the respondent's deposit agreement, which the petitioner signed, provided in Paragraph 15: [4]

---

4. When he opened his account with Sovran Bank, the respondent's predecessor, the petitioner agreed to the rules and conditions established by the bank. The rule relevant to the disclosure, by the Bank, of the petitioner's account information, provided:

"Account Information. You agree that we may furnish our customer lists to others. We may also provide account information: (1) to Chex Systems, Inc., Equifax or other account information services; (2) to anyone who we reasonably believe is conducting a legitimate credit inquiry, subject to any applicable financial privacy laws or other laws or regulations, including, without limitation, inquiries to verify the existence or condition of an account for a third party such as a merchant or credit bureau; (3) in response to any subpoena, summons, court or administrative order, or other legal process which we believe requires our compliance; (4) in connection with collection of indebtedness or to report losses incurred by us; (5) in compliance with any agreement between the Bank and a professional regulatory or disciplinary body; and (6) to NationsBank Corporation and any of its subsidiaries or affiliates. You acknowledge that we provide for your convenience various methods by which you can obtain information on your accounts, and that our reasonable security measures cannot absolutely ensure against 'unauthorized' inquiries. You therefore agree that we will not be responsible for the release of information to anyone not authorized by you who has gained possession of your ATM access device or who has learned your identifying characteristics such as personal identification number (PIN), account number, or social security number. You further agree that if you give your account number to a third person by telephone, that act authorizes that third person to initiate debits to the account even if a particular transaction was not authorized. You hereby authorize us to obtain credit reports, verification of employment and other information in respect to your accounts at any time."

---

"Disclosure of Account Information. The Bank will disclose information to third parties about your account or any transaction thereon in certain circumstances, including, but not limited to, situations where it is necessary for completing any transaction, for complying with government agency or court orders, or for verifying the existence or condition of your account for a third party such as a credit bureau or a merchant or for reporting losses incurred by the Bank in maintaining your account to its subsidiaries and affiliates."

This section of the depositor agreement also is pertinent to the common law confidentiality issue.

The respondent argued in the Circuit Court that the petitioner, by signing the deposit agreement, specifically agreed to the disclosure of his name and telephone number. In support, it pointed to the petitioner's agreement that it be permitted to furnish its depositor lists to others and to the petitioner's acknowledgment that the respondent would not be held liable for releasing information to a person in possession of "identifying characteristics" of the petitioner. The trial court apparently accepted the arguments. Although, by focusing on the disclosure of the unlisted telephone number and not considering the fact that the petitioner's name was revealed or the context in which it was disclosed, the Court of Special Appeals concluded that the deposit agreement was not controlling. On the other hand, noting this time that the disclosure included the petitioner's name, the intermediate appellate court, concurring with the respondent, determined that the deposit agreement protected the respondent from liability for the disclosure because the petitioner's account number had been supplied to Mr. Scott by Fannie Mae.

This case is not about the disclosure of just the name and telephone number of a depositor; rather, it is about the disclosure of that depositor's account information. To be sure, the deposit agreement permitted the respondent to disclose the petitioner's account information under certain circumstances. None of those circumstances was, or is, present in this case. More than the petitioner's name and telephone number, the respondent disclosed to Mr. Scott the petitioner's account number. Fannie Mae may have given Mr. Scott the numbers and Mr. Scott may have known their significance, *i.e.*, that they represented an account number, but Mr. Scott was not told by Fannie Mae whose account number it was and, indeed, he had no idea. Without a name to go with the number he was given, his mere possession of the number was useless. Thus, it was the disclosure of the petitioner's name, by the respondent's customer service representative, in the context of the inquiry by Mr. Scott, which made the informa-

tion supplied by Fannie Mae meaningful. The effect of putting a name to the numbers was to reveal that the account number was the petitioner's and the deposit to that account.

The respondent submits that the mere possession of the account number, obtained from a source other than the respondent, even though it is without knowledge as to whose account number it is, is enough to insulate it from the consequences of its intentional act of disclosure. That argument is belied by the agreement itself. The agreement recognizes two ways in which the bank could disclose account information: intentionally, pursuant to the parties' specific agreement, and accidentally. With respect to the former, the agreement is indeed specific, allowing the bank to disclose account information in accordance with the six enumerated circumstances, as well as to disclose it in connection with furnishing its customer lists. The petitioner's account number, name and telephone number were not disclosed in connection with any of the enumerated circumstances and the respondent was not furnishing its customer lists when it communicated that information.

The latter part of the agreement recognizes that unintentional—accidental—disclosures are bound to occur, "that [the bank's] reasonable security measures cannot absolutely ensure against 'unauthorized' inquiries." Rather than permit those disclosures, the agreement excuses the respondent from liability for them under certain circumstances, one of which being when a third party, without the depositor's consent or knowledge, learns the depositor's account number.

Maryland follows the objective law of contract interpretation and construction. *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298, 304 (1996). As explained in *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985) (citations omitted), that means:

"A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have

meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away [sic] to what the parties thought that the agreement meant or intended it to mean."

It is clear, both from the plain language of the agreement and the context, that the exemption to which the petitioner agreed covered only those disclosures that were accidental, or inadvertent, and did not include a deliberate disclosure, not in accordance with the permitted disclosures, to one whom the respondent knew was not the petitioner.

Given this interpretation of the deposit agreement, which necessarily is a rejection of the interpretation of the deposit agreement advocated by the respondent and adopted by the Court of Special Appeals, the undisputed material facts show a contractual obligation that the respondent owed the petitioner and the breach of that duty. Therefore, it follows that summary judgment was improperly entered on this point.

*Suburban Trust Co. v. Waller*, 44 Md.App. 335, 408 A.2d 758 (1979), which the petitioner maintains controls the outcome of this case, is the foundation for the petitioner's allegations that the respondent breached his right to confidentiality. In that case, the intermediate appellate court considered the "novel question of the existence and scope of a bank's duty of confidentiality concerning the affairs of its depositors." *Id.* at 336, 408 A.2d at 760. There, Waller deposited $800, consisting of fifty and one hundred dollar bills, sequentially numbered, in his bank account at Suburban Trust Company. Believing the money to be stolen, an assistant security officer employed by the bank, who had been alerted by a suspicious teller, called law enforcement officials and disclosed the cus-

tomer's name, address, description, and employment, as well as the information concerning his deposit. Following his arrest and the eventual dismissal of the charges against him, Waller sued the bank, alleging that the bank had invaded his privacy and breached an implied condition of their contract, *i.e.*, the obligation of confidentiality. *Id.* at 337–38, 408 A.2d at 761.

Regarding the existence and scope of a bank's duty of confidentiality, the court, *id.* at 344, 408 A.2d at 764, concluded:

> "We think that a bank depositor in this State has a right to expect that the bank will, to the extent permitted by law, treat as confidential, all information regarding his account and any transaction relating thereto. Accordingly, we hold that, absent compulsion by law, a bank may not make any disclosures concerning a depositor's account without the express or implied consent of the depositor."

We agree with *Waller*. The respondent disclosed to a third party, whom it knew was not the petitioner, the petitioner's name and telephone number and it did so under circumstances that identified, for the third party, the account number in his possession as that belonging to the petitioner and the fact that a deposit recently had been made to that account. Unless the respondent was permitted, expressly or impliedly by the deposit agreement, to make the disclosure, then the holding in *Waller* applies equally to the case *sub judice*. We have already rejected the rationale advocated by the respondent and which carried the day in the intermediate appellate court—"that Walter Scott, through no fault of NationsBank, possessed [the petitioner's] account number not from NationsBank, but from reading his payment advice stub."

The petitioner challenges, finally, the grant of summary judgment with respect to the allegation that the respondent acted in violation of § 1–302 when it disclosed to Mr. Scott his name, telephone number, account number and that Mr. Scott's pay check had been deposited in the petitioner's account. Given the latter disclosure, he submits that "the bank released

account activity to Mr. Scott," which "is clearly account information under any possible reasonable definition of the term, and is certainly within the scope of § 1–301 et seq. of the Financial Institutions Code, as well as the definition provided in *Waller.*"

Determining whether the respondent violated § 1–302 involves statutory construction. The canons of statutory construction are well settled. *See, e.g., Mid–Atlantic Power Supply Ass'n v. Public Service Com'n of Maryland,* 361 Md. 196, 203, 760 A.2d 1087, 1091 (2000); *Mayor & City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000); *Chesapeake and Potomac Tel. Co. of Md. v. Dir. of Fin. for Mayor and City Council of Baltimore,* 343 Md. 567, 578, 683 A.2d 512, 517–18 (1996). Those pertinent to the case *sub judice* are, in pursuing the real goal of statutory interpretation, the discernment of the intent of the Legislature, we begin our inquiry with the words of the statute and, when they are clear and unambiguous, we normally end it there, as well. We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. Moreover, whenever possible, the statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.

Section 1–302 provides, as relevant:

"Except as otherwise expressly provided in this subtitle, a fiduciary institution, its officers, employees, agents, and directors:

"(1) May not disclose to any person any financial record relating to a customer of the institution unless:

"(i) The customer has authorized the disclosure to that person;

"(ii) Proceedings have been instituted for appointment of a guardian of the property or of the person of the customer, and court-appointed counsel presents to the fiduciary institution an order of appointment or a certified

copy of the order issued by or under the direction or supervision of the court or an officer of the court;

"(iii) The customer is disabled and a guardian is appointed or qualified by a court, and the guardian presents to the fiduciary institution an order of appointment or a certified copy of the order issued by or under the direction or supervision of the court or an officer of the court;

"(iv) The customer is deceased and a personal representative is appointed or qualified by a court, and the personal representative presents to the fiduciary institution letters of administration issued by or under the direction or supervision of the court or an officer of the court;

"(v) The Department of Human Resources requests the financial record in the course of verifying the individual's eligibility for public assistance; or

"(vi) The institution received a request or subpoena for information directly from the Child Support Enforcement Administration of the Department of Human Resources under § 10–108.2 or § 10–108.4 of the Family Law Article or indirectly through the Federal Parent Locator Service under 42 U.S.C. § 666(a)(17)."

Section 1–301(b)(1) defines "financial institution" to include a "national banking association," which the respondent concedes it is and, thus, that it is subject to the provisions of the Act. "Financial records" are defined by § 1–301(c)(1). It provides:

Financial record.-(1) "Financial record" means the original or any copy or record of:

"(i) A document that grants signature authority over a deposit or share account;

"(ii) A statement, ledger card, or other record of a deposit or share account that shows transactions in or with respect to that deposit or account;

"(iii) A check, clear draft, or money order that is drawn on a fiduciary institution or issued and payable by or through a fiduciary institution;

"(iv) Any item, other than an institutional or periodic charge, that is made under an agreement between a fiduciary institution and another person and that constitutes a debit or a credit to that person's deposit or share account; or

"(v) Any information that relates to a loan account or an application for a loan."

By its plain terms, what is contemplated to be prohibited, with the possible exception of item (v), pertaining to loan accounts and applications for loans, is the disclosure of certain records, rather than information about those records. Section 1–301(c) is specific in its reference to "the original or any copy or record of" certain documents, subsection (1)(i), certain statements, ledger cards or "other records," subsection (1)(ii), certain checks, clear drafts or money orders, subsection (1)(iii), certain items, subsection (1)(iv), and certain information. Subsection (1)(v).

There is in this case no contention that any records were given to Mr. Scott-no originals or copies of any documents, statements, ledger cards, checks, clear drafts, money orders, items of any kind, or information is alleged. Rather, the only allegations, and the undisputed facts, are that the respondent orally disclosed information that undoubtedly is account information. That does not, however, render the information financial records and, therefore, violative of the statute. We hold that the statute was not violated.

The petitioner relies, in advocating the opposite result, on *Waller*,[5] directing our attention to the court's reference to the predecessor of §§ 1–301–1–306. Of particular relevance to the petitioner is the fact that the court, while acknowledging the statute's inapplicability to that case, stated that the action of

---

**5.** The petitioner also relies on *Nichol v. Howard*, 112 Md.App. 163, 684 A.2d 861 (1996). It is not apposite. As the respondent points out, the court in that case held that the institutions in that case were not fiduciary institutions, subject to the confidentiality provisions of § 1–302, and so did not reach, and it was not necessary to decide, whether that statute prohibited disclosure of a name and an address.

the General Assembly in enacting it buttressed the conclusion it reached in that case. 44 Md.App. at 344–46, 408 A.2d at 764–65. It is also true that the court used expansive language when speaking of the purpose of the statute, e.g., "By the enactment of Laws 1976, ch. 252, the people of Maryland, through their duly elected representatives, made explicit what had theretofore been implicit banks may not, absent legal compulsion or express or implied authorization from the depositor concerned, reveal any information to any one, including police and other government agencies, about the depositor's dealings with the bank." *Id.* at 345, 408 A.2d at 765. Nevertheless, we are not persuaded.

What the court said does not support the conclusion that the petitioner draws. In explaining its conclusion that the legislative action was consistent with its decision, the Court of Special Appeals stated:

"Apparently disturbed by what it believed to be the trend, out of all scotch and notch, among banks and other fiduciary institutions to furnish information without compulsion to governmental agencies, the Legislature in its preamble to Laws 1976, ch. 252 said:

'(a) The General Assembly of Maryland finds and declares that:

'(1) procedures and policies governing the relationship between fiduciary institutions and government agencies have in some cases developed without due regard to the constitutional rights of customers of those institutions; and

'(2) the confidential relationships between fiduciary institutions and their customers must be preserved and protected.'

'(b) It is the purpose of this Act to protect and preserve the confidential relationship between fiduciary institutions and their customers and to promote commerce by prescribing policies and procedures applicable to the disclosure of customer records by fiduciary institutions.' "

44 Md.App. at 344–45, 408 A.2d at 764–65 (footnote omitted). Thus, the concern that the statute addressed was one which lends credence to the interpretation of the statute that we reach. Moreover, we agree with the respondent that *"Waller* does not stand for the general proposition that § 1–301 et seq. provides blanket protection for depositors 'from disclosure of information by a bank.' "

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS, CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.