*Julie Wolf, et al. v. Planning Board of Prince George's County*, No. 2099, September Term, 2022. Opinion by Getty, Joseph M., J.

**HEADNOTES:**

**LAND USE – ZONING AND SUBDIVISION APPROVAL – APPROVAL ORDER**

When a proposed development requires a Conceptual Site Plan or Detailed Site Plan under the Prince George's County Code, zoning and subdivision approvals must proceed in a designated order. PGCC § 27-270. A developer may not move forward to the next step until they receive the prior approval from the Prince George's County Planning Board. Once that approval is obtained, the developer may proceed to the next step unless stayed by a court or the district council.

**LAND USE – ZONING AND SUBDIVISION APPROVAL – EFFECT OF APPEAL**

The Land Use Article of the Maryland Code (2012), § 22-407(a)(4), provides that the filing of a petition for judicial review does not stay enforcement of a final decision of the district council. A pending appeal for judicial review of a prior approval does not prevent a developer from proceeding through the approval process in the absence of a stay ordered by the court or issued by the district council.

**LAND USE – CONSISTENCY BETWEEN PRIOR ZONING AND SUBDIVISION APPROVALS**

Provisions within the Prince George's County Code require conformity between zoning approvals and subdivision approvals. Section 27-285 requires Conceptual Site Plans and Detailed Site Plans to be in general conformance with each other, and Section 24-119 requires that final plats be approved "in accordance with the approved preliminary plan." However, Section 27-270's "Order of approvals" does not have a conformity requirement. The zoning and subdivision processes are designed to be fluid, and strict consistency requirements would hinder the development process.

**LAND USE – ZONING COMPLIANCE IN SUBDIVISION APPLICATIONS**

Zoning and planning are separate development considerations that assess different aspects of a proposed development. Zoning is primarily concerned with what land is used for, and planning considers the overall development of communities. As a part of the planning process, subdivision regulations control how land can be divided. Because the subdivision process is separate from that of zoning, subdivision applications are focused on the subdivision regulations rather than zoning compliance.

Circuit Court for Prince George's County
Case No. CAL20-14895

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2099

September Term, 2022

_____

JULIE WOLF, ET AL.

v.

PLANNING BOARD OF PRINCE
GEORGE'S COUNTY

_____

Graeff,
Leahy,
Getty, Joseph M.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Getty, J.

_____

Filed: December 21, 2023

This appeal concerns a decision by the Prince George's County Planning Board ("Planning Board" or "Board") to approve a developer's Preliminary Plan of Subdivision ("PPS").  While Maryland's appellate courts have considered many planning and zoning issues throughout the State, and in Prince George's County in particular,[1] this case presents an opportunity to review issues concerning when a developer may proceed through the zoning and subdivision process despite a pending appeal.  It further asks us to consider whether zoning approvals must conform with prior approvals, including whether approvals must be consistent across the separate processes of zoning and planning.

On April 2, 2020, the Planning Board approved a PPS application for the Suffrage Point project, a residential development proposed and developed by Werrlein WSSC, LLC ("Werrlein").  Appellants, a group of residents living near the Suffrage Point site (collectively, "Residents"), petitioned for judicial review in the Circuit Court for Prince George's County, which affirmed the Board's approval.

This is not the first time the Suffrage Point project (previously known as Magruder Pointe) has been appealed to this Court.  In 2022, this Court issued a reported opinion remanding an approval for the project to the Prince George's County Council, sitting as District Council.  *City of Hyattsville v. Prince George's Cnty. Council*, 254 Md. App. 1 (2022).  To be clear, this is not a reconsideration of our decision in *Hyattsville*; as will be explained further, this case pertains to a subsequent step in the development approval

---

[1] *E.g.*, *City of Hyattsville v. Prince George's Cnty. Council*, 254 Md. App. 1 (2022); *Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 444 Md. 490 (2015); *City of Bowie v. Prince George's Cnty.*, 384 Md. 413 (2004).

process. The *Hyattsville* decision nevertheless remains relevant because the remand created a new issue on appeal in this case.

The parties ask us to address several questions, which we have condensed and reworded as follows:

1. Does Section 27-270 of the Prince George's County Zoning Ordinance prohibit the Planning Board from approving a PPS while an appeal of the underlying Conceptual Site Plan is pending?

2. Does Section 27-270 require conformity between a Conceptual Site Plan and a subsequent PPS?

3. Is the Planning Board required to review a PPS for compliance with density and other Zoning Ordinance provisions?

We answer all three questions in the negative and affirm the circuit court's decision.

## BACKGROUND

### A. The Zoning Process in Prince George's County

A basic overview of development procedures in Prince George's County is key to understanding this appeal. Development is governed by the Prince George's County Code ("PGCC"). Subtitle 27 of the PGCC contains the zoning provisions ("Zoning Ordinance"), and Subtitle 24 regulates how parcels of land can be divided and consolidated ("Subdivision Regulations").[2] Under Section 27-270 of the Zoning Ordinance, approvals

---

[2] A new zoning ordinance and subdivision regulations went into effect on April 1, 2022. The new provisions do not apply retroactively, and the new code allowed pre-existing approvals to proceed under the prior code. Because Werrlein began its approval process before the new provisions went into effect, the prior zoning ordinance and subdivision regulations apply to this appeal. All references to the Zoning Ordinance and Subdivision Regulations in this opinion refer to the prior versions predating April 1, 2022, not the ones currently in effect.

2

in projects requiring a Conceptual Site Plan ("CSP") or Detailed Site Plan must proceed in the following order: (1) zoning; (2) CSP; (3) preliminary plan of subdivision[3]; (4) Detailed Site Plan; (5) final plat of subdivision; and (6) grading, building, use and occupancy permits.[4] The stage at issue here is the third stage, the approval of a PPS.

The Prince George's County Planning Board of the Maryland-National Capital Park and Planning Commission has the authority to approve CSPs, PPSs, Detailed Site Plans, and final plats of subdivision. The Prince George's County Council, sitting as District Council, has the authority to approve zoning amendments and hears appeals of Planning Board decisions for CSPs and other aspects of the Zoning Ordinance. PGCC §§ 27-228.01, 27-280. Conversely, Planning Board subdivision decisions are appealable to the circuit court. Md. Code (2012), Land Use Article § 23-401.

## B. The Subject Property

The property at issue here is located within the City of Hyattsville in Prince George's County.[5] There are two parcels separated by a city street. The Upper Parcel is

---

[3] Section 27-270(a)(4) of the Zoning Ordinance reads: "Preliminary plat of subdivision." The Planning Board indicates that this is typo and should read "preliminary plan of subdivision." This is also supported by the current Zoning Ordinance, which says "plan" and not "plat."

[4] Additional information about the Zoning Ordinance and Subdivision Regulations will be provided as needed in this opinion's analysis. A more thorough look at zoning and planning in Prince George's County can be found in *County Council of Prince George's County v. Zimmer Development Co.*, 444 Md. 490 (2015).

[5] The cover page of Werrlein's PPS application, which uses the former project name of "Magruder Pointe," is included as Appendix A to this opinion, which contains diagrams of the subject property.

3

approximately 3.6 acres in size, and the Lower Parcel is approximately 4.66 acres. There is a public park adjacent to the Lower Parcel to its south and west. There are single-family detached homes to the north of the property and multi-family apartment buildings south of the Upper Parcel and east of the Lower Parcel. The project for development of both parcels is known as the Suffrage Point project.

## C. Procedural History

We will forgo a detailed recitation of the full procedural history of the Suffrage Point project and adopt the facts set forth in *City of Hyattsville v. Prince George's County Council* as supplemented below.[6] 254 Md. App. 1 (2022). To summarize, in March 2018, Werrlein submitted an application to the Planning Board, proposing to develop the Upper and Lower Parcels for residential use, with 31 dwelling units on the Upper Parcel and 41 dwelling units on the Lower Parcel. After a series of amended applications, the District Council approved Werrlein's CSP application and changed the zoning of the area to allow for Werrlein's proposed uses. The City of Hyattsville and a group of nearby residents petitioned for judicial review of the Council's decision to change the zoning and to approve Werrlein's CSP. Ultimately, this Court upheld the Council's changes to the zoning but remanded the CSP approval to the District Council because the approval expressed density as number of dwelling units per acre of gross lot area, not net acre of lot area as required by the Zoning Ordinance. On remand, the Council corrected the density and again granted

---

[6] We again emphasize that although the facts overlap, this appeal is distinct from the one in *Hyattsville*: *Hyattsville* addressed the second stage of the development process, the CSP, while this appeal addresses the third, the PPS.

its approval of the CSP. Residents once again filed for judicial review of the District Council's decision in the Circuit Court for Prince George's County. As of the time of this appeal, a hearing in the Circuit Court has not been held.

In late 2019, while the first appeal of the CSP was pending in the Circuit Court, Werrlein submitted a PPS for the Upper Parcel.[7] Werrlein proposed either 30 or 31 residential lots on the Upper Parcel, depending on whether the Planning Board would approve smaller lot sizes at a later stage. The Planning Board issued a staff report for the PPS on March 2, 2020, recommending approval of the PPS subject to 13 conditions. The staff report includes the following language about density:

> The exhibit [a concept plan map supplied by Werrlein] indicates that, when combining the dwelling unit types on Parcel 1, the density would result in approximately 8.6 dwelling units per acre on Parcel 1 and approximately 8.8 dwelling units on Parcel 2, based on the gross acreages. The PPS is consistent with the CSP approval and will be further evaluated at the time of [Detailed Site Plan] for bulk standards, in accordance with Condition 3 of [the project's CSP]. The applicant should provide the proposed density on the PPS, in accordance with the approved CSP.

On March 12, 2020, the Planning Board held a hearing on the Upper Parcel PPS. The chair of the Planning Board noted at the outset of the hearing that several interested parties, including some residents and the City of Hyattsville, had requested that the Board not take action on the PPS until the CSP appeal was completed. The chair stated that the

---

[7] Werrlein's PPS for the Upper Parcel labeled the Lower Parcel as an outparcel for infrastructure. Werrlein subsequently filed a separate PPS for the Lower Parcel.

Board was required by statute to act on the PPS application within 70 days of its filing or the application would be approved automatically as submitted.[8]

In addition, the Board said it could not delay its consideration of Werrlein's application without losing the ability to impose conditions because the parties had not requested and the court had not issued a stay in the appeal. At the hearing, the Planning Board heard from its staff, Werrlein, the City of Hyattsville, and several residents of the area around the property. At the close of the hearing, the Planning Board voted to approve the PPS with the conditions recommended in the staff report.

On April 2, 2020, the Planning Board adopted a formal resolution approving the PPS. The resolution contained the following condition about density: "Prior to signature approval of the preliminary plan of subdivision, the plan shall be revised to provide density information in the general notes, in accordance with the approved Conceptual Site Plan . . . ."[9] The resolution also found that the PPS "conform[ed] to the approved CSP."

Residents filed a petition for judicial review of the Planning Board's resolution approving Werrlein's PPS in the Circuit Court for Prince George's County. Residents argued *inter alia* that the PPS application was invalid because the underlying CSP was pending judicial review and that the approved densities exceeded what was allowed by the

---

[8] Section 24-119(d)(4) of the Subdivision Regulations requires that the Planning Board take final action on a preliminary plan application within 70 calendar days of acceptance unless the applicant consents to a 70-day extension. If the Board does not take such final action, "the preliminary plan of subdivision shall be deemed to have been approved." *Id.*

[9] Werrlein did file a revised PPS providing the density information as required by this condition.

6

Zoning Ordinance. The circuit court disagreed, concluding that the pendency of the CSP appeal did not invalidate the PPS and that, should the CSP densities be deemed erroneous, the PPS could be corrected as needed. Residents timely appealed to this Court.

## STANDARD OF REVIEW

Our review relies on two standards of review. Administrative bodies such as the Planning Board receive a high level of deference in their fact-finding. *Trinity Assembly of God of Balt. City, Inc. v. People's Couns. for Balt. Cnty.*, 407 Md. 53, 78 (2008). An appellate court must affirm the administrative body's decision on the facts if it is supported by substantial evidence, such that "a reasonable mind might accept as adequate" the evidence supporting the decision. *Id.* (quoting *People's Couns. for Balt. Cnty. v. Loyola Coll. in Md.*, 406 Md. 54, 66–67 (2008)).

When reviewing legal conclusions of a zoning body, however, we are less deferential. An appellate court may reverse an administrative body's legal conclusions if they are based on erroneous interpretation or application of the statutes, ordinances, and regulations applicable to the subject property. *Id.* The zoning body does receive a measure of deference regarding the statutes, ordinances, and regulations that it implements, and we take the zoning body's relevant expertise into consideration when reviewing its conclusions of law. *Id.*

## DISCUSSION

### A. *Section 27-270's Order of Approvals*

Residents first argue that Section 27-270 of the Zoning Ordinance requires all prior applications to be final before an applicant can move on to the next step of the development

process. Within this argument, Residents assert that this implicit finality requirement means that a developer cannot move to the next stage while an appeal of a prior approval is pending. To support this, Residents point to Section 27-268(a)(3) of the Zoning Ordinance, which states that one of the purposes of the site plan process is "[t]o provide simple, efficient procedures for the review and approval of site plans." According to Residents, approval of a PPS before a CSP appeal is complete is not efficient and can create errors throughout the site plan process. Because the appeal of Werrlein's CSP is still pending, Residents contend that the Planning Board could not approve Werrlein's PPS.

The Planning Board and Werrlein both disagree with Residents that there is an implicit requirement in Section 27-270 that pending appeals prohibit the Board from acting on an application. The Board and Werrlein argue that the CSP appeal did not invalidate the Board's approval of the CSP and point out that no stay was issued in the CSP appeal. Both the Planning Board and Werrlein rely on the Maryland Supreme Court's decision in *City of Bowie v. Prince George's County*, where the Court upheld approval of a final plat while an appeal of the underlying preliminary approval was pending, as support for their argument that appeals do not inherently invalidate a prior approval. 384 Md. 413 (2004).

Section 27-270, under Division 9 ("Site Plans") of the Zoning Ordinance, provides in full:

Sec. 27-270. - Order of approvals.
(a) When a Conceptual Site Plan or Detailed Site Plan is required unless otherwise provided for in this Subtitle, the following order of approvals shall be observed:
  (1)     Zoning;
  (2)     Conceptual Site Plan;
  (3)     Preliminary Pla[n] of Subdivision;

8

(4)     Detailed Site Plan;

(5)     Final Plat of Subdivision (a final plat of subdivision may be approved prior to a detailed site plan, if the technical staff determines that the site plan approval will not affect final plat approval);

(6)     Grading, building, use and occupancy permits.

Further, Section 27-276(a)(1) requires that "[p]rior to approval of any preliminary plan of subdivision or Detailed Site Plan . . . for the development or use of any land for which a Conceptual Site Plan is required, the applicant shall obtain approval of a Conceptual Site Plan from the Planning Board."

It is clear from these provisions—and no party disagrees—that a CSP must be approved before the Planning Board can approve a PPS for a project. The issue here is the impact a pending CSP appeal has on the Board's authority to approve a subsequent PPS. For the following reasons, we agree with the Planning Board and Werrlein that the pending appeal of the Upper Parcel CSP did not prohibit the Board from approving the Upper Parcel PPS.

We see no finality requirement in the plain language of Section 27-270 stating that an appeal automatically rescinds an approval of a prior stage. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 181 (2001) ("We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit that statute's meaning."). The Planning Board approved the CSP underlying the PPS on June 10, 2019, six months before Werrlein filed its PPS application on December 20, 2019.

9

Residents' argument that the pending appeals of the CSP prevented the Board from approving the PPS is unavailing. There was no stay issued in any of the CSP court proceedings that would have paused the approval process. Section 22-407(a)(4) of the Land Use Article of the Maryland Code (2012) states that a filing of a petition for judicial review "does not stay enforcement of the final decision of the district council, but the district council may stay enforcement of its final decision or the reviewing court may order a stay on terms it considers proper." Here, the District Council did not stay the enforcement of the CSP approval, nor did the circuit court order a stay. As such, although an appeal was pending that could require its revision, the CSP remained enforceable and approved.

We are also persuaded by the Planning Board and Werrlein's arguments relying on the Maryland Supreme Court's decision in *City of Bowie*. 384 Md. 413 (2004). There, the City of Bowie challenged a hotel developer's submission of a final plat of subdivision while appeals of its underlying preliminary plat and Transportation Facilities Mitigation Plan were pending. *Id*. at 422. The Planning Board approved the final plat, and the City appealed on the basis that the pending "action for judicial review of the preliminary plat precluded the Board from exercising jurisdiction to approve [the final plat]."[10] *Id*. at 423– 24. Our Supreme Court disagreed, holding that based on the plain language, "the Board was not required to withhold its consideration [of the final plat] until such time as all legal challenges to the preliminary plat's approval were exhausted." *Id*. at 430. The Court also noted that a developer who moves forward despite a pending appeal "risks exposure to

---

[10] As in this case, no stay was issued to prevent the hotel developer from proceeding in its development process. *Id*. at 423.

10

suits and the enforcement of regulations" should the underlying approval be invalidated, but the "Court cannot presume to dictate the business risks in which a developer may choose to engage." *Id.*

Residents attempt to distinguish *City of Bowie* because of minor differences in the statutory language. Section 24-119(e) of the Subdivision Regulations, at issue in *City of Bowie*, states that "[u]pon approval of the preliminary plan of subdivision, the subdivider may proceed to prepare the final plat(s)." Residents place great emphasis on the use of the word "prepare" in Section 24-119(e) and contrast it with the order of approvals required by Section 27-270 of the Zoning Ordinance. We find this distinction unpersuasive. Regardless of the precise language used in Sections 24-119(e) and 27-270, the basic reasoning in *City of Bowie* applies here. The Supreme Court refused to add a finality requirement to Section 24-119(e) when it was not supported by the language of the provision. We similarly refuse to do so here.[11]

The Planning Board is entitled to a level of deference in its interpretation of the Zoning Ordinance as the administrative body implementing it, subject to reversal for clear error. Because we agree with the Board that Section 27-270 does not require all appeals to be completed before a developer can proceed to the next step, there is no clear error here that demands reversal.

---

[11] It is true that Werrlein's CSP might be invalidated by the circuit court, requiring it to revise its project. As envisioned in *City of Bowie*, this is a risk that Werrlein chose to subject itself to, not something prohibited by the Zoning Ordinance.

***B. Consistency Between Conceptual Site Plan and Preliminary Plan of Subdivision***

Residents next contend that, implicit in Section 27-270's Order of Approvals, each subsequent application must be consistent with the approved plans underlying it. Based upon this alleged requirement, Residents argue that the PPS was inconsistent with the underlying CSP because of differences in the number of overall lots and the PPS's labeling of the Lower Parcel as an outparcel for infrastructure only.

Werrlein counters that Section 27-270 does not require that "a PPS be a mirror image of a CSP." In rationalizing the differences between the CSP and the PPS, Werrlein points to the fact that the CSP covered both the Upper and Lower Parcels and the subsequent PPS for each parcel together conformed to the approved CSP. The Planning Board asserts that any implicit conformity requirement in Section 27-270 would be "superfluous" with requirements elsewhere in the Zoning Ordinance and Subdivision Regulations that explicitly require Detailed Site Plans and Final Plats of Subdivision to conform and accord with prior approvals.

We find Residents' argument unpersuasive. Nothing in Section 27-270 requires that each plan must conform with prior approvals. As the Board indicates, other provisions of the Zoning Ordinance and Subdivision Regulations *do* require conformity: Section 27-285(b)(2) of the Zoning Ordinance requires that the Planning Board "find that the Detailed Site Plan is in general conformance with the approved Conceptual Site Plan" and Section 24-119(e) of the Subdivision Regulations requires that a developer must prepare final plats "in accordance with the approved preliminary plan and shall include any modifications made by the Planning Board." These provisions highlight that consistency is required

12

within different steps in the Zoning Ordinance and within different steps in the Subdivision Regulations. Nowhere is consistency required across the Zoning Ordinance (*e.g.*, CSP) and the Subdivision Regulations (*e.g.*, PPS). Given that no such conformity requirement is present in Section 27-270 and that conformity is explicitly considered at later stages in the process, we do not find that the Planning Board erred in approving the PPS despite there being some differences between the CSP and the PPS.

Further, the processes in place to review and approve development proposals are fluid. *Cf. Mayor and Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 536–37 (2002) ("In response to the imperfect nature of planning and zoning and the need for greater flexibility in responding to the impacts of these imperfections, various mechanisms have been designed and incorporated into the plan[n]ing and zoning process to allow for changes in the uses allowed within a given zone while at the same time retaining the safeguards of the requirement of uniformity within zones."). As a practical matter, developers need to be able to respond to issues as development progresses. The evolving nature of development precludes strict rigidity in conformity with prior approvals. Residents' own argument appears to highlight this fact because they fail to propose where the line for conformity and nonconformity could or should be drawn, relying instead on a broad assertion that Werrlein's PPS is wholly inconsistent with the CSP. While some consistency between applications and approvals may be beneficial, we decline to read a conformity requirement into Section 27-270, particularly absent workable guidelines for what level of

conformity would be necessary and given the deference due to the Planning Board in interpreting provisions it implements.[12]

## C. The PPS's Density and Zoning Ordinance Compliance

Residents' final argument is that the density contained within the approved PPS violated the Zoning Ordinance. In support, Residents point to the use of gross acreage as the basis for the calculation although the Zoning Ordinance requires the use of net acre of lot area. PGCC § 27-107.01(a)(66). Residents further aver that the use of gross acreage instead of net lot area results in a density exceeding what is permissible under the Zoning Ordinance. In their opening brief, Residents presented a math calculation showing that the Upper Parcel could not support the proposed number of dwellings and still comply with the Zoning Ordinance once public ways were excluded from the available acreage.

The Planning Board asserts that, at the PPS stage, it is not required to determine whether a proposal wholly complies with the Zoning Ordinance. In support, the Board indicates that the Subdivision Regulations only require review of applicable provisions of the Zoning Ordinance for PPSs. The Board further highlights that a PPS does not show where buildings will be constructed and that density and other zoning issues are reviewed at the site plan and building permit stages. For its part, Werrlein agrees with the Board that density is calculated at the Detailed Site Plan stage, exemplified by the condition in the PPS and CSP that requires final density calculations prior to a Detailed Site Plan approval.

---

[12] The parties also presented arguments about whether the CSP and PPS were consistent with one another. Because we decide that conformity is not required, we do not address these arguments.

14

We find the Planning Board and Werrlein's arguments convincing. As noted by the Board, the CSP and PPS are separate processes that serve different functions: a CSP is part of the zoning process, while a PPS is part of the planning process. In *County Council of Prince George's County v. Zimmer Development Co.*, Judge Glenn T. Harrell, Jr., systematically explained the regimes of zoning and planning, noting that "[a]lthough related concepts, it is well established in Maryland that zoning and planning are separate functions." 444 Md. 490, 505 (2015). Specifically, zoning "is used to describe the process of setting aside disconnected tracts of land varying in shape and dimensions, and dedicating them to particular uses designed in some degree to serve the interests of the whole territory affected by the plan." *Id.* at 505 (internal quotations omitted). Conversely, planning pertains to "the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience." *Id.* (quoting *Bd. of Cnty. Comm'rs of Cecil Cnty. v. Gaster*, 285 Md. 233, 246 (1979)). The subdivision process falls under the umbrella of planning, referring to "the division and consolidation of parcels of land," and subdivision regulations "controlling how, when, and under what circumstances subdivision may occur are used to promote development that is beneficial to the community." *Id.* at 523. Pertinently, Judge Harrell described subdivision regulations as "attempt[ing] to respond to issues that are not so well-addressed through zoning, the initial step in the development process." *Id.*

Density is undoubtedly a zoning consideration rather than a planning consideration. It is controlled by regulations within the Zoning Ordinance, which dictate the maximum

permitted density in each underlying zone. *See* PGCC § 27-109 ("Classes of zones"); PGCC Part 10A (providing density requirements for each overlay zone). Further, only the Zoning Ordinance, not the Subdivision Regulations, contains a definition for density. PGCC § 27-107.01(66). Thus, the fact that a PPS, which is a planning step in the development process, does not thoroughly review or finalize density, which is a zoning consideration, makes sense.

We are also persuaded by the Planning Board's argument that the locations of buildings are not included in a PPS and thus density cannot be finalized at the PPS stage. *See* PGCC § 24-120 ("Documents required for major subdivisions"). This fact further distinguishes the PPS as a part of the planning process, which is primarily concerned with the *division* of land, rather than the zoning process, which is primarily concerned with the *use* of land. Although density was included in Werrlein's PPS, it appears that it was present more for thoroughness and consistency rather than as a controlling consideration in the PPS. Throughout the application process and in its arguments, the Planning Board was clear that density would be fully considered at a later stage as part of its zoning review. We therefore decline to disturb the PPS based on the density calculation.

## CONCLUSION

The Planning Board did not err in approving Werrlein's PPS. The pending appeal of the underlying CSP did not prevent Werrlein from moving forward with its development applications. To the extent the CSP and PPS were inconsistent, there is no implicit conformity requirement in Section 27-270 of the Zoning Ordinance that calls for us to reverse the PPS approval for such inconsistency. Finally, the Planning Board was clear

16

that density is a zoning consideration not subject to detailed review at the PPS stage, so Residents' argument asserting an improper density calculation is misplaced. For the above reasons, we affirm the circuit court's decision to uphold the Planning Board's approval of Werrlein's Upper Parcel PPS.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

17

## APPENDIX A



18