*Darrell Eugene Matthews v. State of Maryland*, No. 12, September Term, 2023.  Opinion by Eaves, J.

**MD. CODE ANN., CRIMINAL PROCEDURE ARTICLE § 8-201 – POST-CONVICTION DNA TESTING** – **EVIDENCE PRESERVATION**

The Supreme Court of Maryland held that the State's duty to preserve scientific identification evidence is limited to those crimes enumerated in § 8-201(j)(1)(ii) of the Criminal Procedure Article ("CP") and does not extend to all crimes for which a person is permitted to petition for DNA testing.  Although there is a difference between the list of petition-eligible crimes in CP § 8-201(b) and the list of crimes in CP § 8-201(j)(1)(ii) for which evidence preservation is required, this difference does not constitute ambiguity.  The plain text of the statute, supported by its historical context, indicates that the General Assembly intended a broad category of crimes for which convicted persons could petition for DNA testing, but a narrower category of crimes for which evidence preservation is required.

**MD. CODE ANN., CRIMINAL PROCEDURE ARTICLE § 8-201 – POST-CONVICTION DNA TESTING** – **EVIDENCE PRESERVATION – INCHOATE OFFENSES**

The Supreme Court held that the State's duty to preserve scientific identification evidence does not apply to the inchoate offenses of those crimes listed under CP § 8-201(j)(1)(ii).  Because the language of the evidence preservation requirement is clear and unambiguous, the Court declined to extend the requirement beyond the plain text to attempted murder or other inchoate offenses.

**MD. CODE ANN., CRIMINAL PROCEDURE ARTICLE § 8-201 – POST-CONVICTION DNA TESTING** – **EVIDENCE PRESERVATION – ATTEMPTED MURDER**

The Supreme Court held that the circuit court properly denied the Petition for Post-Conviction DNA Testing because the State was not required to preserve evidence related to Appellant's attempted murder conviction for the duration of his sentence and because the evidence Appellant sought to test had been destroyed consistent with the police department's evidence retention policy.  Therefore, the Court affirmed the judgment of the circuit court.

Circuit Court for Montgomery County
Case No. 114155C
Argued: December 5, 2023

IN THE SUPREME COURT

OF MARYLAND

No. 12

September Term, 2023

_____

DARRELL EUGENE MATTHEWS

v.

STATE OF MARYLAND

_____

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

_____

Opinion by Eaves, J.

_____

Filed: March 25, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case stems from the Circuit Court for Montgomery County's denial of Appellant, Darrell Eugene Matthews's, second Petition for Post-Conviction DNA Testing (the "Petition") of a black glove found at the scene of the crime of attempted murder for which Appellant was convicted. During the trial that led to Appellant's conviction, the glove was not marked for identification, offered or admitted into evidence, or discussed at length. In 2019, after the filing of Appellant's first petition for DNA testing in 2014, but before the second petition for DNA testing in 2022, the glove was destroyed in accordance with the evidence retention policy of the Montgomery County Police Department ("MCPD").

We are asked to decide whether the circuit court correctly denied Appellant's Petition. We hold that while the State's duty to preserve scientific identification evidence is governed by § 8-201(j) of the Criminal Procedure Article ("CP") of the Maryland Code, that duty does not extend to all crimes for which a person is permitted to petition for DNA testing, nor does it apply to the inchoate offenses of those crimes listed in CP § 8-201(j)(1)(ii). Further, the circuit court did not err when it denied Appellant's Petition because the glove was properly destroyed under the MCPD's evidence retention policy. Accordingly, for the reasons we outline below, we affirm the judgment of the circuit court.

# I
# BACKGROUND

## A. *Factual and Procedural History*

In May 2011, Appellant was convicted of attempted first-degree murder and four other charges stemming from an incident in Montgomery County, Maryland, in which the

victim survived two gunshot wounds.[1]

At trial, the MCPD detective who served as the lead investigator for the shooting testified that the victim said that "he believed [the defendant] had a glove" during the incident. The lead investigator further testified that, on the night of the shooting, a citizen had turned over a glove to a patrol officer. That officer then delivered the glove to a forensic technician who was present at the crime scene. On cross-examination, the lead investigator testified that her understanding of the glove's significance was that "it might have . . . belonged to Darrell Matthews." The investigator explained that she did not order forensic testing of the glove for two reasons: (1) it was not collected in a standard manner, and she did not know the glove's origins, later clarifying, "[the glove] wasn't recovered by an officer. I don't know how many hands it had passed through before it had got into an evidence bag" and (2) she "had a victim and an eyewitness saying . . . who had shot [the victim]."

The victim testified that he had known Appellant for approximately eight to 10 years, "maybe even longer," before the shooting, Appellant was the shooter, he could see Appellant clearly when Appellant shot him, and he (the victim) had called two people shortly after the shooting and told them that Appellant was the shooter. The victim was also asked at trial about whether he saw a glove and testified, "I don't remember seeing a glove." Following his conviction, Appellant was subsequently sentenced to life imprisonment for the attempted murder charge, along with 30 years consecutive for the

---

[1] This trial was Appellant's second; a 2010 trial on these charges resulted in a mistrial due to juror misconduct.

other charges.[2]

In October 2014, Appellant filed a pro se petition seeking testing of the glove for DNA and gunshot residue under CP § 8-201 (sometimes referred to herein as the "DNA Testing Statute" or the "Statute).  The State filed a response in opposition, arguing that Appellant had not been convicted of any of the crimes for which a convicted person could petition for testing and that the Statute does not provide for gunshot residue testing.[3]  The circuit court denied Appellant's request for testing in March 2015.[4]

Appellant filed a motion in August 2019 seeking the grand jury testimony transcripts from his case, which the circuit court granted.

On August 5, 2022, Appellant filed the Petition that is the subject of this appeal. Therein, Appellant noted that several of his convictions, including attempted murder, made

---

[2] Following an appeal, Appellant's conviction for possession of a regulated firearm by a prohibited person under § 5-133(b) of the Public Safety Article of the Maryland Code was vacated, and his sentence was reduced to a life sentence with 25 consecutive years. *See Matthews v. State*, No. 1442, Sept. Term, 2011, slip op. at 7 (Md. Ct. Spec. App. Feb. 22, 2013).  That appeal and the subsequent resentencing are not relevant to the present appeal.

[3] At the time of this pro se petition, attempted murder was not included in the list of crimes for which a person could petition for DNA testing.  2008 Md. Laws, ch. 337.

[4] Along with his October 2014 petition seeking testing, Appellant filed a pro se Petition for Post-Conviction Relief based on ineffective assistance of counsel and an amended petition through counsel in February 2015.  Among other alleged examples of ineffective assistance, the petition asserted that trial counsel had failed to request DNA and gunshot residue testing of the glove.  In April 2015, the circuit court denied relief based on the failure-to-test argument, stating that the decision not to request testing was not unreasonable.  However, the circuit court granted the petition in part on alternative grounds and allowed Appellant to file for review of his sentence by a three-judge panel. Ultimately, a three-judge panel affirmed the sentence without a hearing.

him eligible to petition for DNA testing under CP § 8-201. He sought DNA testing of the glove, arguing that such testing was in the interest of justice because "if DNA testing excludes [him], that evidence would be exculpatory."

In November 2022, the circuit court held a hearing on the Petition. While the parties agreed that Appellant was eligible to petition for testing based on his attempted murder conviction, the State nonetheless argued that Appellant could not meet the standard under the statute because any DNA results from the glove would not produce exculpatory or mitigating evidence. Because the State did not know at that point whether the glove still existed, the court granted a continuance and ordered the State to determine the status of the glove. On January 5, 2023, the State filed an affidavit from the MCPD lead investigator,[5] which stated that the time limit under the MCPD's evidence retention policy (seven years for attempted first-degree murder) had elapsed, the lead investigator had "authorized destruction of the glove[,]" and the glove had been destroyed as of November 1, 2019.

One week later, the circuit court reconvened the hearing on the Petition, in light of the MCPD's verification that the glove had been destroyed. Appellant's counsel argued that the glove should have been preserved for the duration of Appellant's sentence and that, because it had been intentionally and willfully destroyed, the court must reopen the post-conviction proceeding and order a new trial. The State argued that the statute's evidence preservation requirement does not cover attempted murder and reiterated its argument that, even if it did, the glove would not provide exculpatory or mitigating evidence.

---

[5] The individual who filed the 2023 affidavit is the same detective who served as lead investigator for the 2009 shooting and who testified at Appellant's 2011 trial.

4

In July 2023, the circuit court issued an opinion and order denying the Petition. The circuit court ruled that under the DNA Testing Statute, the State's destruction of the glove was not wrongful because the evidence preservation requirement does not apply to attempted murder convictions. It further stated that under Maryland Rule 4-710, the court must deny the Petition because the State had searched for the glove, the glove no longer existed, and there was no evidence that the glove had been intentionally and willfully destroyed in contravention of the DNA Testing Statute or any applicable protocol. The court also denied Appellant's oral motion to reopen a post-conviction proceeding and order a new trial. Appellant noted his appeal from the order, and the Appellate Court of Maryland subsequently transferred the appeal to this Court. *See* CP § 8-201(k)(6).

**B.** **_The DNA Testing Statutory Framework and Crimes of Violence_**

An individual may petition for DNA testing in accordance with the following:

(b) Notwithstanding any other law governing postconviction relief, a person who is convicted of a crime of violence under § 14-101 of the Criminal Law Article may file a petition:

(1) for DNA testing of scientific identification evidence that the State possesses that is related to the judgment of conviction; or

(2) for a search by a law enforcement agency of a law enforcement data base or log for the purpose of identifying the source of physical evidence used for DNA testing.

CP § 8-201(b). The State is required to preserve certain scientific identification evidence in accordance with the following:

(j)(1) The State shall preserve scientific identification evidence that:

(i) the State has reason to know contains DNA material; and

5

(ii) is secured in connection with a violation of § 2-201 [first-degree murder], § 2-204 [second-degree murder], § 2-207 [manslaughter], § 3-303 [first-degree rape], or § 3-304 [second-degree rape] of the Criminal Law Article.

(2) The State shall preserve scientific identification evidence described in paragraph (1) of this subsection for the time of the sentence, including any consecutive sentence imposed in connection with the offense.

CP § 8-201 (j). CP § 8-201(j)(3) sets forth the procedure a court must follow if the State is unable to produce certain scientific identification evidence that it is required to preserve under subsection (j)(1). It provides:

(3)(i) If the State is unable to produce scientific identification evidence described in [CP § 8-201(j)(1)], the court shall hold a hearing to determine whether the failure to produce evidence was the result of intentional and willful destruction.

(ii) If the court determines at a hearing under subparagraph (i) of this paragraph that the failure to produce evidence was the result of intentional and willful destruction, the court shall:

1. order a postconviction hearing to be conducted in accordance with subparagraph (iii) of this paragraph; and

2. at the postconviction hearing infer that the results of the postconviction DNA testing would have been favorable to the petitioner.

CP § 8-201(j)(3). Although this is the current version of the DNA Testing Statute at issue here, we start with a review of the history of the statute.

In 2001, the General Assembly enacted a law to permit people to petition for post-conviction DNA testing of scientific identification evidence related to seven specifically enumerated crimes: first-degree murder, second-degree murder, manslaughter, first-degree rape, second-degree rape, first-degree sexual offense, and second-degree sexual offense.

6

2001 Md. Laws, ch. 418. The original version of the Statute also required the State to preserve scientific identification evidence secured in connection with those crimes for three years after sentencing or for an additional period pursuant to an order from this Court or the Appellate Court. *Id.*

The following year, the General Assembly revised the Statute to extend the length of time for which the State must preserve scientific identification evidence to "the time of the sentence, including any consecutive sentence imposed in connection with the offense." 2002 Md. Laws, ch. 465. This revision to the Statute, however, did not expand the list of crimes for which the additional length of time applied.

In 2015, the General Assembly considered a bill to expand the scope of the DNA Testing Statute as it related to the list of crimes. S.B. 583, 2015 Leg., 435th Sess. (Md. 2015) (as introduced and assigned to the S. Jud. Proc. Comm., Feb. 9, 2015). The bill originally proposed extending the ability to petition for DNA testing to convictions for any "crime of violence under § 14-101 of the Criminal Law Article." *Id.* At the time of this bill's introduction, § 14-101 included more crimes of violence or categories of crimes of violence than the seven crimes enumerated in the original DNA Testing Statute; in addition to murder, rape, first- and second-degree sexual offense, and voluntary manslaughter, the "crimes of violence" list included, and continues to include, abduction, first-degree arson, robbery, two carjacking offenses, several assault offenses, and other crimes. Md. Code Ann., Crim. Law ("CR") § 14-101(a) (2002, 2021 Repl. Vol.). Notably, the list of crimes of violence also includes attempt offenses for many of the enumerated crimes, including attempted murder. *Id.* § 14-101(a)(19).

7

The bill as originally introduced also proposed extending the evidence preservation requirement to all of these crimes, including attempted murder. S.B. 583, 2015 Leg., 435th Sess. (Md. 2015) (as introduced and assigned to the S. Jud. Proc. Comm., Feb. 9, 2015). During the legislative process, however, the bill was changed to reduce the list of crimes for which the State was required to preserve scientific identification evidence throughout the term of a sentence. S. Jud. Proc. Comm. Rep. 32, 435th Sess. (Md. 2015). Specifically, the amendment limited the evidence preservation requirement to those crimes for which evidence preservation was already required under the statute (*i.e.*, first-degree murder, second-degree murder, manslaughter, first-degree rape, second-degree rape, first-degree sexual offense, and second-degree sexual offense). *Id.* Ultimately, while the final bill significantly expanded the list of offenses for which a person was eligible to petition for DNA testing, it left unchanged the list of offenses for which the State was required to preserve scientific identification evidence.[6] 2015 Md. Laws, ch. 369 (codified as revised at CP § 8-201(b), (j)).

Therefore, since 2015, the DNA Testing Statute has permitted a person to petition for testing based on any crime of violence listed in CR § 14-101, including the inchoate offense of attempted murder. But the Statute requires the State to preserve scientific

_____

[6] There have been other revisions to the DNA Testing Statute beyond the ones summarized here. *See* CP § 8-201 (2001, 2018 Repl. Vol.). Those amendments—which address technical revisions and expand the ability to petition to searches of law enforcement databases or logs, clarify the statute's applicability to guilty pleas and other pleas, modify the requirements for a court to order testing and the requirements for a subsequent order, and establish the procedure following intentional and willful destruction of evidence—are, however, not relevant to this appeal.

identification evidence only for the duration of a convicted person's sentence for five crimes: first-degree murder, second-degree murder, manslaughter, first-degree rape, and second-degree rape.[7] CP § 8-201(j)(1)(ii).

Once a petition for DNA testing has been filed and the court has held a hearing,[8] Maryland Rule 4-710 governs how the court must proceed. The Rule provides in pertinent part:

> (a)(1) The court shall deny a petition for DNA testing if it finds that:
>
> (A) the State has made an adequate search for scientific identification evidence that is related to the judgment of conviction, that no such evidence exists within its possession or within its ability to acquire from a third party on its own initiative or by court order, and that no such evidence that the State was required by law or applicable protocol to preserve was intentionally and willfully destroyed; or
>
> (B) scientific identification evidence exists but the method of testing requested by petitioner is not generally accepted in the relevant scientific community, or that there is no reasonable probability that DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing.

With the framework of the DNA Testing Statute, its application to crimes of violence, and the procedural rule in mind, we turn now to an analysis of the case before us.

## II
## STANDARD OF REVIEW

Because Appellant's Petition rests on an interpretation of the DNA Testing Statute,

---

[7] In 2017, the General Assembly reclassified first- and second-degree sexual offense as first- and second-degree rape, respectively. 2017 Md. Laws, ch. 161; *see also* 2017 Md. Laws, ch. 62, § 6.

[8] In certain circumstances, a hearing is not required after the filing of a petition. *See* Md. Rule 4-709(b).

this Court reviews the circuit court's decision *de novo*. *See Edwards v. State*, 453 Md. 174, 185 (2017) ("Because we are asked to interpret the language in the post-conviction DNA testing statute . . . our review is plenary."). For factual findings that do not rely on this Court's statutory interpretation (*e.g.*, whether the State has made an adequate search for scientific identification evidence), we apply a clearly erroneous standard. *See Phillips v. State*, 451 Md. 180, 189 (2017) ("The trial court's determination . . . to the extent that [it] is a factual finding, will not be set aside unless clearly erroneous.").

## III
## ANALYSIS

In urging this Court to reverse the circuit court's denial of his Petition, Appellant first argues that he is eligible for post-conviction DNA testing because he was convicted of a crime of violence under CR § 14-101 and because there is a reasonable probability that the testing has the potential to produce exculpatory or mitigating evidence. *See* CP § 8-201(d)(1). Next, Appellant asserts that the State was required to preserve the glove as scientific identification evidence because the evidence preservation requirement logically follows from a person's ability to petition for DNA testing. Appellant also contends, albeit briefly, that his attempted murder conviction is covered by the State's duty to preserve evidence for murder convictions, noting that attempted murder is the inchoate offense of murder and carries the same penalty. The Statute requires evidence preservation when the scientific identification evidence is secured, he argues, "in connection with a violation" of the listed crimes, which includes both first- and second-degree murder. Appellant argues that the statute is ambiguous and that it should be construed in his favor based on the rule

10

of lenity. Finally, Appellant reasons that because the State had a duty to preserve the glove as scientific identification evidence for the duration of his sentence, its willful destruction means that the court must grant a post-conviction hearing and infer that the results of the testing would have been favorable to him. *See* CP § 8-201(j)(3)(ii) ("If the court determines . . . that the failure to produce evidence was the result of intentional and willful destruction, the court shall . . . order a post-conviction hearing . . . and . . . at the post-conviction hearing infer that the results of the post-conviction DNA testing would have been favorable to the petitioner.").

The State argues that the evidence preservation requirement in the DNA Testing Statute applies only to certain *completed* offenses and, therefore, the State did not violate the statute when it destroyed evidence related to an *attempted* murder conviction. Under the plain text of the statute, the State contends, there is a clear distinction between the list of crimes for which DNA testing petitions are permitted and the list of crimes for which evidence preservation is required. Attempted murder is a crime for which a convicted person may *petition* for DNA testing, but it is not a crime for which the State is required to *preserve* the evidence throughout the duration of the sentence. The State also points to the 2015 revision of the DNA Testing Statute to support its argument that the General Assembly "specifically and intentionally declined to expand the evidence retention requirement" to attempted murder and other crimes. According to the State, because it was not required to preserve the glove as scientific identification evidence, the circuit court correctly denied Appellant's Petition under Maryland Rule 4-710.

We hold that the DNA Testing Statute's evidence preservation requirement does not

11

apply to an attempted murder conviction. To begin, we disagree with Appellant that CP § 8-201 is ambiguous as to whether the State's duty to preserve scientific identification evidence for the duration of the sentence applies to an attempted murder conviction. We have long adhered to the principle that "[t]he best source of legislative intent is the statute's plain language, and when the language is clear and unambiguous, our inquiry ordinarily ends there." *Smith v. State*, 399 Md. 565, 578 (2007) (citations omitted). In addition, we "neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the [General Assembly] used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 181 (2001).

Here, the statute is clear and unambiguous. It expressly lists the crimes for which the State is required to preserve evidence throughout the individual's sentence: "The State shall preserve scientific identification evidence that . . . is secured in connection with a violation of § 2-201 [first-degree murder], § 2-204 [second-degree murder], § 2-207 [manslaughter], § 3-303 [first-degree rape], or § 3-304 [second-degree rape] of the Criminal Law Article." CP § 8-201(j)(1). Attempted first-degree murder—a violation of CR § 2-205—is not included in this list. In light of this unambiguous statutory text, this Court cannot engage in "[a] forced . . . interpretation" to extend the evidence preservation requirement to attempt offenses. *Taylor*, 365 Md. at 181.

The DNA Testing Statute's historical amendments, which are a part of understanding the context of the statutory scheme, further support our interpretation of its

12

plain text.[9]  The 2015 revision is remarkably on point.  Therein, the General Assembly considered S.B. 583, which, as originally introduced, would have extended the evidence preservation requirement to additional crimes, including attempted first-degree murder. However, as noted above in Section I.B., the General Assembly ultimately amended the bill to keep the evidence preservation requirement unchanged—a decision that specifically omitted the inchoate offense of attempted first-degree murder.  From this statutory context, we conclude that the General Assembly considered—but ultimately rejected—a proposal to extend the evidence preservation requirement beyond the statute's current scope.

This interpretation is also consistent with our prior case law.  In *Washington v. State*, we held that conspiracy to commit murder was not a petition-eligible offense under CP § 8-201, even though murder and attempted murder are included on the statutory list of crimes of violence.  450 Md. 319, 331 (2016).  We noted that because the General Assembly knows how to draft legislation that includes conspiracy, but had declined to do so in this statute, we were prohibited from interpreting the statute beyond its plain meaning and legislative intent.  *Id.* at 334–35.  Just as in *Washington*, where we reasoned that the list of specific petition-eligible offenses within the statute does not encompass any related inchoate offenses, here we conclude that the offenses enumerated in CP § 8-201(j)(1)(ii), for which evidence preservation is required, do not encompass their related inchoate

---

[9] As we discussed in *Kaczorowski v. Mayor and City Council of Baltimore*, we "may and often must consider" certain evidence that provides context for the statutory language, including "amendments that occurred as it passed through the legislature[.]"  309 Md. 505, 515 (1987); *cf. Williams v. Morgan State Univ.*, 484 Md. 534, 557 n.13 (2023) (examining revisions to the Maryland Tort Claims Act as part of the statute's historical context).

13

offenses.

Second, we reject Appellant's argument that the rule of lenity should apply in this case. Citing *Quansah v. State*, 207 Md. App. 636 (2012), Appellant argues:

> The statute, being somewhat ambiguous, should be governed by the Rule of Lenity and fundamental fairness, and construed in favor of the Appellant. When an ambiguity exists, the rule of lenity applies. For example, if there is doubt as to the penalty, the law directs that his punishment must be construed to favor a milder penalty over a harsher one.

The rule of lenity is a principle of statutory construction. *White v. State*, 318 Md. 740, 746 (1990). Under that rule, when there is an "otherwise unresolvable ambiguity" in a criminal statute, this Court will employ the interpretation that favors the defendant. *Oglesby v. State*, 441 Md. 673, 681 (2015). We have cautioned, however, that "[i]t is a tool of last resort, to be rarely deployed and applied only when all other tools of statutory construction fail to resolve an ambiguity." *Id.* Here, reliance on the rule is not appropriate because there is no ambiguity; the legislative intent is clear based on both the statutory text and historical context. Therefore, we decline Appellant's invitation to apply the rule of lenity in this case.

The authority to extend the evidence preservation requirement to attempted murder rested with the General Assembly when it revised CP § 8-201 in 2015, and that authority remains with the General Assembly today. If Appellant or others similarly situated believe that the evidence preservation requirement should extend to certain attempt offenses, including attempted murder, they can urge the General Assembly to make that change. However, this Court declines to do so by judicial fiat.

14

After considering the clear and unambiguous text of CP § 8-201, examining its historical amendments, reviewing our analysis in *Washington v. State*, and reasoning that the rule of lenity does not apply, we hold that the State's duty to preserve scientific identification evidence is limited to those offenses enumerated in CP § 8-201(j)(1)(ii) and does not extend to all crimes for which a person is permitted to petition for DNA testing. Furthermore, we hold that the duty to preserve scientific identification evidence does not apply to the inchoate offenses of those crimes listed in CP § 8-201(j)(1)(ii).[10]

Finally, Appellant also contends that the State's willful and intentional destruction of the glove means that the circuit court was required to grant a post-conviction hearing and infer that the results of the testing would have been favorable to him.[11]  Essentially, he suggests that, because the glove was destroyed after he filed a motion in August 2019 seeking grand jury testimony transcripts from his case, the State willfully and intentionally destroyed the glove to thwart his effort to have it tested.  We find no merit in Appellant's argument.

---

[10] The only exception is where an inchoate offense is specifically enumerated.  For instance, the first-degree murder statute states that "[a] person who solicits another or conspires with another to commit murder in the first degree is guilty of murder in the first degree if the death of another occurs as a result of the solicitation or conspiracy."  CR § 2-201(c).  Because the statute explicitly includes these two inchoate offenses, if a person is convicted of first-degree murder under CR § 2-201, the State has a duty to preserve the scientific identification evidence related to that conviction, even if the murder was accomplished through solicitation or conspiracy.

[11] It is unclear if this is connected to Appellant's argument that the rule of lenity applies or if it is a separate contention.  Nonetheless, we will address it separately.

The relief Appellant seeks is grounded in subsection (j)(3) of the DNA Testing

Statute which states:

> If the State is unable to produce scientific identification evidence
> described in paragraph (1) of this subsection, the court shall hold a hearing
> to determine whether the failure to produce evidence was the result of
> intentional and willful destruction.

In order for the Appellant to be entitled to such a hearing, the State must be unable

to produce scientific identification evidence that it was statutorily required to preserve.  CP

§ 8-201(j)(1) requires the State to preserve evidence only when it has reason to know it

contains DNA material *and* it was secured in connection with one of the offenses

enumerated in the statute.   Because attempted murder is not one of the statutorily

enumerated offenses, the State had no duty to preserve the glove. Accordingly, the circuit

court was not required "to determine whether the failure to produce the evidence was the

result of intentional and willful destruction."  CP § 8-201(j)(3).[12]  Having determined that

---

[12] We note that Maryland Rule 4-710 further supports our conclusion that the glove's intentional and willful destruction is immaterial in this case.  That Rule, in pertinent part, provides that the

> court shall deny a petition for DNA testing if it finds that:

> the State has made an adequate search for scientific identification evidence that is related to the judgment of conviction, that no such evidence exists within its possession or within its ability to acquire from a third party on its own initiative or by court order, *and that no such evidence that the State was required by law or applicable protocol to preserve was intentionally and willfully destroyed*[.]

Md. Rule 4-710(a)(1)(A) (emphasis added).  Here, as explained, the State was not "required by law or applicable protocol to preserve" the glove.  In addition to there being no statutory requirement for the preservation of the glove, the uncontroverted evidence was that the

the glove the Appellant sought to test had been destroyed and that retention was not required, the circuit court correctly denied the Petition pursuant to Maryland Rule 4-710(a).

# IV
# CONCLUSION

We hold that the State was not required to preserve scientific identification evidence related to Appellant's attempted murder conviction. Maryland Rule 4-710(a)(1)(A) requires a court to deny a petition seeking DNA testing if it finds that the State has adequately searched for scientific identification evidence, the evidence is neither in the State's possession nor obtainable from a third party, and the State did not intentionally and willfully destroy any evidence that it was required by law or protocol to preserve.[13] The circuit court correctly found that the State had searched for the glove, the glove had been

---

glove was destroyed in conformance with the Montgomery County Police Department's Retention Policy.

[13] At the November 7, 2022, hearing on Appellant's Petition—prior to the discovery that the glove had been destroyed—the State argued that there was not a reasonable probability that the testing would produce exculpatory or mitigating evidence because "there's . . . no chain of custody for this glove beyond the officer receiving it from someone[.]" In the original statute from 2001, an unbroken chain of custody was an explicit requirement for testing. *See* 2001 Md. Laws, ch. 418 (codified at CP § 8-201) ("[A] court shall order DNA testing if the court finds that . . . the scientific identification evidence to be tested has been subject to a chain of custody . . . that is sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect . . . ."). However, in 2003, the General Assembly significantly reduced the requirements to petition for testing, including eliminating the chain of custody requirement. *See* 2003 Md. Laws, ch. 240; *see also Jackson v. State*, 448 Md. 387, 405-06 (2016) ("In 2001, the standards governing when DNA testing could be ordered were rigorous[,]" but "the 2003 amendment relaxed the standard for entitlement to DNA testing[.]"). We, therefore, caution the State against relying in the future on the argument that testing need not occur *solely* because of a chain of custody issue, given the General Assembly's decision to eliminate that requirement.

destroyed, and the State was not required to preserve it by law or applicable protocol.  The

circuit court was, therefore, required to deny the petition under Maryland Rule 4-

710(a)(1)(A).  Accordingly, we affirm the judgment of the Circuit Court for Montgomery

County.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED.  APPELLANT TO PAY COSTS.**